## Danny Joe McGEE, Appellant,

v.

## The STATE of Texas.

### No. 1408–00.

Court of Criminal Appeals of Texas.

April 23, 2003.

Kevin Howard, Houston, for Appellant.

Rikke Burke Graber, Asst. DA, Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

KEASLER, J., delivered the opinion of the Court, joined by KELLER, P.J., and WOMACK and HERVEY, JJ., and joined in part by JOHNSON, HOLCOMB, and COCHRAN, JJ.

Danny Joe McGee argues that the crack cocaine retrieved from between his buttocks during a visual body cavity inspection should have been suppressed because it was the product of a warrantless arrest and the fruit of an unconstitutional search. We disagree.

### STATEMENT OF FACTS

The evidence, viewed in the light most favorable to the trial court's ruling,[1] showed that on December 20, 1997, Officer Rowan received a tip from a concerned citizen that McGee and two other men were selling crack cocaine at the intersection of Fleming and Cool Wood. The citizen gave Officer Rowan the names of McGee and one other man, and a detailed description of the clothing of all three. The citizen also told Officer Rowan that McGee was hiding the crack cocaine between his buttocks. It is uncertain whether Officer Rowan had relied on the informant in the past because he provided contradicting testimony, stating at first that he had relied on the informant in the past, then later denying prior use of the informant.

Officer Rowan went to the location and found three men who matched the description. Upon approaching the men, the officer smelled marijuana and saw blue smoke surrounding the men. Officer Rowan testified that based on his training and experience, the blue smoke was from marijuana. He asked the men for identification and corroborated the two names provided by the citizen. The officer then checked the men for weapons and searched the area where they were standing. Although there were no weapons, a cigar containing marijuana was discovered on the ground. McGee admitted that at least one person was smoking marijuana when Officer Row-

---

1. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim. App.2000).

an approached the group, although he denied that he was smoking marijuana.

Officer Rowan handcuffed the three men, placed them in the squad car, and drove to a nearby fire station. At the fire station, Officer Rowan took McGee to a secluded area of the station and compelled McGee to drop his pants, bend over, and spread his buttocks. Officer Rowan proceeded to perform a visual search of McGee's anal region. The officer testified that he saw several rocks of crack cocaine wrapped in red plastic in plain view lodged between McGee's buttocks. He further testified that the crack cocaine was not inside McGee's anus, but when the cocaine was exposed, McGee attempted to push it into his anus. Officer Rowan testified that he was able to retrieve the drugs before McGee pushed them into his anus without digitally probing the anus. McGee was then charged with possession of cocaine.

## PROCEDURAL HISTORY

Before trial, McGee presented his motion to suppress evidence, which the trial court denied after a hearing. McGee then pled guilty to the charge of possession of cocaine weighing less than one gram and was sentenced to 90 days' confinement. McGee subsequently filed a notice of appeal claiming that the trial court erred in denying his motion. Specifically, McGee argued that the evidence recovered was the fruit of (1) an unconstitutional arrest not justified by the Texas Code of Criminal Procedure and (2) an unconstitutional search. The court of appeals agreed with McGee, holding that the evidence seized was the product of a warrantless arrest

not justified by Articles 14.01, 14.03, or 14.04 of the Texas Code of Criminal Procedure.[2] It also held that the body cavity search was unreasonable and so the fruits of the search should have been suppressed.[3] We granted the State's petition to review both rulings.

## ANALYSIS

### I. Warrantless Arrest

The State argues that the Court of Appeals erred in concluding that none of the statutory requirements to justify a warrantless arrest were proven. When a defendant seeks to suppress evidence on the basis of an illegal arrest, the burden of proof is placed on the defendant to rebut the presumption of proper conduct.[4] The defendant may satisfy this burden by establishing that he was arrested without a warrant.[5] Once this is shown, the burden shifts to the State to either produce evidence of a warrant or prove the reasonableness of the arrest.[6] The State demonstrates reasonableness by showing that one of the statutory exceptions to the warrant requirement has been met.[7]

The evidence presented during the suppression hearing established that McGee was arrested without a warrant. And neither party contests that there was a warrantless arrest. So the burden shifted to the State to prove that the requirements of a warrantless arrest were satisfied. This is where the substance of the State's petition lies.

### A. Article 14.01(b)

2. *McGee v. State,* 23 S.W.3d 156, 161–66 (Tex. App.-Houston [14th Dist] 2000).

3. *Id.* at 168.

4. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim. App.1986).

5. *Id.*

6. *Id.* at 9–10.

7. *See generally* TEX.CODE CRIM. PROC. ANN. chapt. 14 (Vernon 1981).

■ In its second ground for review, the State challenges the appellate court's conclusion that Article 14.01(b) was not satisfied by the State. In Texas, a warrantless arrest is permitted only when (1) probable cause for the arrest exists and (2) at least one of the statutory exceptions to the warrant requirement is met.[8] Article 14.01(b) provides:

> A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.

■ Probable cause exists where police have reasonably trustworthy information sufficient to warrant a reasonable person to believe that a particular person has committed or is committing an offense.[9] This court has previously upheld arrests under Article 14.01(b) when police officers personally observed behavior that was not overtly criminal but when coupled with the officers' prior knowledge produced probable cause.[10] For instance, in *Lunde*, officers received a tip from an informant with personal knowledge that the defendant was dealing heroin. Officers went to the specified location and confirmed the physical description given by the informant. They then saw the defendant engage in behavior officers described as consistent with a drug transaction. Though the court pointed out that the behavior witnessed was not an overt criminal act, it upheld the warrantless arrest under Article 14.01(b) based on the prior information received from the informant.

■ Here we have nearly identical facts. An informant approached Officer Rowan and relayed information about criminal activity he had witnessed. The informant provided Officer Rowan with a detailed description of McGee. He told the officer that McGee was wearing a "yellow rain slicker, black rain pants, and a black stocking cap," and that McGee could be found on the corner of Fleming and Cool Wood. The informant also provided McGee's name and the name of one of his two companions. The informant was concerned that McGee was selling crack cocaine in the area and that he was hiding the cocaine between his buttocks. Based on this tip, Officer Rowan proceeded to the corner of Fleming and Cool Wood and saw that a person standing there, McGee, matched the description provided by the informant because he was wearing a yellow rain coat, black rain pants, and a black cap. The officer then asked the men for identification and their names matched those provided by the informant. He observed marijuana smoke in the air above McGee and a marijuana cigarette on the ground next to him. He also smelled the odor of marijuana emanating from McGee. The cloud of marijuana smoke in the air, the smell of marijuana, and the marijuana cigarette were consistent with the offense of possession of marijuana. When coupled with the officer's prior knowledge supplied by the informant, the observations were sufficient to provide Officer Rowan with probable cause to arrest under Article 14.01(b).

Therefore, Article 14.01(b) excused Officer Rowan from having to obtain an arrest warrant. Because we hold that the arrest was justified under 14.01(b), we need not consider the State's first and third grounds for review concerning Articles 14.03 and 14.04.

---

**8.** *Stull v. State,* 772 S.W.2d 449, 451 (Tex. Crim.App.1989).

**9.** *Amores v. State,* 816 S.W.2d 407, 413 (Tex. Crim.App.1991).

**10.** *See Miller v. State,* 458 S.W.2d 680 (Tex. Crim.App.1970); *Lunde v. State,* 736 S.W.2d 665 (Tex.Crim.App.1987).

## II. Unconstitutional Search

### A. Search Incident to Arrest

 Pursuant to the Fourth Amendment, a warrantless search of either a person or property is considered per se unreasonable subject to a "few specifically defined and well established exceptions."[11] The Supreme Court has held that voluntary consent to search, search under exigent circumstances, and search incident to arrest are among these exceptions.[12] It is the State's burden to show that the search falls within one of these exceptions.[13] The State claims that since McGee was legally arrested, the search was reasonable as a search incident to arrest. A search incident to arrest permits officers to search a defendant, or areas within the defendant's immediate control, to prevent the concealment or destruction of evidence.[14] But it is unclear whether the exception permits officers to conduct the type of search that was performed on McGee.

 There are several different forms of searches, each involving a different degree of intrusion. Courts classify some of the more intrusive searches as "strip searches," "visual body-cavity searches," and "manual body-cavity searches."[15] The term "strip search" generally refers to an inspection of a naked person, without any scrutiny of the person's cavities.[16] A "visual body-cavity search" includes a visual inspection of a person's anal or genital areas.[17] A "manual body-cavity search" involves some degree of probing or touching a person's body cavities.[18] Officer Rowan testified that he ordered McGee to bend over and spread his buttocks for inspection, but that he did not touch or probe McGee's anus. So here we are confronted with the legality of a visual body-cavity search. The question of whether a search incident to arrest includes a visual body-cavity search is one of first impression in this Court. We turn to existing case law for guidance in our determination.

 In *United States v. Robinson*, the Supreme Court has held that a search incident to arrest authorizes the police to conduct "a full search of the person."[19] But *Robinson* did not do away with the requirement that all searches be reasonable, nor did it hold that all searches to arrest, no matter how intrusive, are per se reasonable.[20] "To the contrary, since *Robinson*, the Supreme Court has continued to emphasize that Fourth Amendment jurisprudence prohibits unreasonable searches

---

11. *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

12. *United States v. Edwards*, 415 U.S. 800, 808–09, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) (search incident to arrest); *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (voluntary consent); *Vale v. Louisiana*, 399 U.S. 30, 34–36, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970) (exigent circumstances).

13. *McDonald v. United States*, 335 U.S. 451, 454, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

14. *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

15. See, e.g. *Blackburn v. Snow*, 771 F.2d 556, 561 n. 3 (1st Cir.1985); *Deserly v. Department of Corrections*, 298 Mont. 328, 995 P.2d 972, 976 n. 1 (2000); *Hughes v. Commonwealth*, 31 Va.App. 447, 524 S.E.2d 155, 159 (2000) (en banc).

16. *Blackburn*, 771 F.2d at 561 n. 3.

17. *Id.*

18. *Id.*

19. *United States v. Robinson*, 414 U.S. 218, 236, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

20. See *Amaechi v. West*, 237 F.3d 356, 361 (4th Cir.2001).

incident to arrest." [21] So to determine whether the search was constitutional, it is not enough to determine that it was a search pursuant to arrest as the State contends. Rather, we must determine whether the search was reasonable.

■ In *Bell v. Wolfish*, the Supreme Court held that a reasonableness inquiry requires a court to balance the need for the particular search against the invasion of the personal rights that the search entailed.[22] Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.[23] Each analysis will turn on the particular facts and circumstances of the underlying case.[24] No one factor is determinative.

### 1. Scope of the Intrusion

■ Visual body-cavity searches are among the most intrusive of searches.[25] Its intrusiveness "cannot be overstated." [26] We agree with the Court of Appeals that visual body-cavity searches can be "demeaning, dehumanizing, undignified, humiliating, [and] terrifying...." [27] However, our inquiry does not end here. We must still determine whether the legitimate interests of law enforcement outweigh the intrusiveness of the search.

### 2. Manner in which Search was Conducted

■ In reviewing a visual body-cavity search, we must decide whether, on the whole, the manner in which the search was conducted was reasonable.[28] One factor we may consider is whether the search was violent.[29] While it may have been an uncomfortable experience for McGee, that is not sufficient to classify the search as violent.

■ We may also consider whether the officers conducting the search had training and/or experience in conducting such searches.[30] Officer Rowan testified that while he had never had formal training for conducting cavity searches, he had on-the-job experience while working with senior officers. He also stated that it was commonplace for criminals to hide narcotics in their body cavities. So while Officer Rowan never had formal training, we find that his work experience qualified him to perform the search in this instance.

So we conclude that the manner in which the search was conducted was reasonable, which weighs in favor of the conclusion that the search was reasonable.

### 3. Justification for the Search

■ The Supreme Court has upheld the use of visual body cavity searches

**21.** *Id.* (*citing Illinois v. Lafayette,* 462 U.S. 640, 645, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983)).

**22.** 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

**23.** *Id.*

**24.** *U.S. v. Lilly,* 576 F.2d 1240, 1246 (5th Cir.1978).

**25.** *See Wolfish,* 441 U.S. at 558, 99 S.Ct. 1861; *United States v. Lilly,* 576 F.2d 1240 (5th Cir.1978); *Patterson v. State,* 598 S.W.2d 265, 269 (Tex.Crim.App.1980).

**26.** *Kennedy v. Los Angeles Police Dep't,* 901 F.2d 702, 711 (9th Cir.1989).

**27.** *McGee,* 23 S.W.3d at 167 (*citing Swain v. Spinney,* 117 F.3d 1, 6 (1st Cir.1997); *Mary Beth G. v. Chicago,* 723 F.2d 1263, 1273 (7th Cir.1983)).

**28.** *See Del Raine v. Williford,* 32 F.3d 1024, 1040–41 (7th Cir.1994).

**29.** *See Covino v. Patrissi,* 967 F.2d 73, 80 (2d Cir.1992).

**30.** *Del Raine,* 32 F.3d at 1040–41.

based on suspicion short of probable cause.[31] There is some debate among the courts as to what level of justification an officer must have before being permitted to perform a visual cavity search.[32] A distinction is also made for body cavity searches performed at borders or in prisons, as suspects in those cases possess a diminished expectation of privacy.[33] In this case there was not a diminished expectation of privacy as McGee's search was not conducted at either a border or in a prison. But we have already established that the arresting officer had probable cause to believe that McGee was engaged in illegal activity. Probable cause is the highest level of justification employed by the courts. While we do not create a per se rule that probable cause always justifies a body cavity search, in this instance we find from the totality of the circumstances that Officer Rowan had sufficient justification to believe that a search was necessary.

### 4. Where the Search was Conducted

 The Ninth Circuit has held that the search must be conducted in a hygienic environment where there is no risk of infection.[34] We agree. The search occurred in a fire station. Officer Rowan obtained sanitary rubber gloves to conduct the investigation. The fire station was not as sterile an environment as a hospital. But since Officer Rowan was merely visually inspecting the area between the but-

tocks and there was no penetration of McGee's anus, we believe on the whole it was reasonable. Given that there was no penetration of the body, a less sterile environment was satisfactory.

 The Fourth Circuit provides additional guidance. It has held that an emphasis should be placed on whether the officer sought to protect the privacy interests of the individual by conducting the search in a private area.[35] That court noted that strip searches and body cavity searches involve such an intrusion that they should rarely, if ever, be conducted in public places.[36] We agree that visual body cavity inspections should not be conducted in a public place. Here Officer Rowan testified that he searched each of the suspects one at a time. Each was taken to a separate location, which the officer testified as being "more secluded" than the rest of the fire station. He also testified that only his partner was in the same area. Though Officer Rowan did not take McGee into a separate room to conduct the search, we find that he properly conducted himself so as to protect the privacy interests of McGee.

Three of the four factors weigh in favor of the conclusion that this search was reasonable. The trial court was correct in denying McGee's motion to suppress.

### CONCLUSION

Because Article 14.01(b) of the Code of Criminal Procedure excused the arresting

---

31. *Wolfish,* 441 U.S. at 559–60, 99 S.Ct. 1861.

32. *Compare Blackburn v. Snow,* 771 F.2d 556, 564 (1st Cir.1985) (holding that body cavity searches should not be conducted on anything less than probable cause), *with Rivas v. United States,* 368 F.2d 703, 710 (9th Cir.1966) (holding that more than a mere suspicion is necessary for warrantless body cavity searches).

33. *See United States v. Montoya de Hernandez,* 473 U.S. 531, 537–40, 105 S.Ct. 3304, 87

L.Ed.2d 381 (1985) (dealing with border searches); *Hudson v. Palmer,* 468 U.S. 517, 525–26, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (dealing with prison searches).

34. *Huguez v. United States,* 406 F.2d 366, 382 (9th Cir.1968).

35. *See Logan v. Shealy,* 660 F.2d 1007, 1014 (4th Cir.1981).

36. *Id.*

officer from having to obtain an arrest warrant, McGee's arrest was valid. Further, the visual body cavity search in this instance was a reasonable search incident to arrest, thereby excusing the officer's need to obtain a search warrant. The Court of Appeals was incorrect in holding that the cocaine should have been suppressed. We reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

COCHRAN, J., filed a concurring opinion, joined by JOHNSON and HOLCOMB, JJ.

PRICE, J., filed a concurring and dissenting opinion joined by MEYERS, J.

COCHRAN, J., filed a concurring opinion in which JOHNSON and HOLCOMB, JJ., joined.

I join all but Part IIA3 of the majority opinion. If the majority concludes that merely because Officer Rowan had probable cause to believe that appellant "was engaged in illegal activity," he therefore had authority to make a visual body cavity search, I respectfully disagree. I do not think that a visual body cavity search is permissible as part of a routine search incident to arrest. But I also think that the trial court did not abuse its discretion by

implicitly concluding that Officer Rowan had at least "reasonable suspicion" to believe that appellant had cocaine hidden between his buttocks.[1] Therefore, this was not a routine search, it was one specifically targeted to the very location a "concerned citizen"[2] said cocaine would be found on appellant. Because Officer Rowan had already confirmed that the other information that this "concerned citizen" had provided was accurate, the officer's conduct in conducting a highly intrusive visual body-cavity search was not unreasonable under the Fourth Amendment in this particular case.

The human body is a private sanctuary which is generally entitled to significant protection under the Fourth Amendment.[3] On the other hand, the human body is not "a sanctuary in which evidence may be concealed with impunity."[4] A person who intentionally uses a body cavity as a pocketbook cannot claim "King's X" when reasonable suspicion or probable cause points to that body-cavity pocketbook.

PRICE, J., filed this concurring and dissenting opinion, in which MEYERS, J., joined.

In this case, we are called upon to decide whether the arrest and subsequent body-cavity search of the appellant were

---

1. *See Swain v. Spinney,* 117 F.3d 1, 5 (1st Cir.1997) (stating that police must have a "reasonable suspicion" that evidence will be found before conducting a visual body cavity search); *Justice v. Peachtree City,* 961 F.2d 188, 192 (11th Cir.1992).

2. Appellant, the State, and the court of appeals all used the term "a concerned citizen" to describe the person who called Officer Rowan.

3. *See Bell v. Wolfish,* 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (stating that the practice of strip and visual body cavity searches "instinctively gives us the most pause"); *Mary Beth G. v. Chicago,* 723

F.2d 1263, 1272 (7th Cir.1983) (quoting another court's description of visual body cavity searches as "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission").

4. *People v. Scott,* 21 Cal.3d 284, 293, 145 Cal.Rptr. 876, 578 P.2d 123 (1978); *see also Commonwealth v. Thomas,* 429 Mass. 403, 708 N.E.2d 669 (1999) (upholding warrantless visual body cavity search at police station because officer had, at the time he made search, probable cause to believe that defendant had cocaine hidden between his buttocks).

authorized, in the absence of a warrant, by the laws of Texas and the United States. I agree with the majority that the appellant's arrest was authorized under Article 14.01(b) of the Texas Code of Criminal Procedure. I disagree with the majority's position that the visual body-cavity search performed at a local fire station was authorized by the United States Constitution. This search, which involved a bodily intrusion, was not supported by exigent circumstances.

Neither the United States Supreme Court, nor this Court, has determined whether a search incident to arrest may include a visual body-cavity search, today we address the question. Cases from federal courts and other states provide persuasive authority.

The United States Supreme Court has held that a search incident to a lawful arrest authorizes the police to conduct "a full search of the person." *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Police may also search the area within the arrestee's immediate control, *see Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and seize his or her personal effects that are evidence of the crime. *See United States v. Edwards*, 415 U.S. 800, 804–05, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

A police officer's decision to conduct a search incident to arrest is largely free from judicial scrutiny before and after the arrest. The Supreme Court explained in *Robinson* that a police officers decision about how and where to search a person is "a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search." *Robinson*, 414 U.S. at 235, 94 S.Ct. 467. The

officer's authority to search incident to arrest is justified by the need to protect the officer's safety and to prevent the concealment or destruction of evidence. *Ibid.* The scope of the search must not exceed the justification for the search, however; this exception to the warrant requirement does not give officers unlimited authority to search an arrestee. *See Edwards*, 415 U.S. at 808 n.9, 94 S.Ct. 1234.

The authority of the police under the Fourth Amendment to conduct a full search of an arrestee's person without a warrant is *only skin deep*. The policy considerations that justify the search incident to arrest—the need to disarm the suspect and to prevent the destruction of evidence under the suspect's direct control—do not apply to searches involving intrusions beyond the body's surface. *Schmerber v. California*, 384 U.S. 757, 769, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

> The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.

*Id.* at 769–70, 86 S.Ct. 1826. The Supreme Court reaffirmed this principle when, in *Illinois v. Lafayette*, 462 U.S. 640, 646 n. 2, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), it explained that it was not addressing strip searches as incident to arrest in *Edwards*.

In many jurisdictions, the search of a body-cavity is considered an intrusion into the body under *Schmerber* that falls outside the permissible scope of a search incident to arrest.[1] I agree with this conclu-

---

1. *See United States v. Oyekan*, 786 F.2d 832, 839 n. 13 (8th Cir.1986) (stating that "a body

sion. Body-cavity searches are different from the average full search of a person; they create natural apprehension and revulsion, and "instinctively give [courts] the most pause." *Bell v. Wolfish,* 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

The State argues that, because the appellant was under lawful arrest, Rowan was authorized to search the appellant to find contraband or weapons under *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The State cites *Salinas v. Breier,* 695 F.2d 1073, 1085 (7th Cir.1982), in support of its argument that, when a person is in custody following a lawful arrest and there is probable cause to believe illegal drugs are hidden on or within the person's body, limited measures may be taken to recover the substance. Because Rowan had probable cause to believe the appellant possessed illegal drugs between his buttocks, the State argues, he was authorized to take the appellant to the fire station and retrieve the drugs.

In *Salinas,* the Seventh Circuit relied on *Robinson, Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), and *Edwards,* which all permit a full search of one lawfully arrested. But the language in these cases should not be read to encompass body-cavity searches. The searches in these cases involved the removal of items from the clothing of the arrestees. *Edwards,* 415 U.S. at 802, 94 S.Ct. 1234; *Robinson,* 414 U.S. at 222–24, 94 S.Ct. 467; *Gustafson,* 414 U.S. at 262, 94 S.Ct. 488. The searches in these cases, although extensive, were not as complete as a body-cavity search and did not have any "extreme or patently abusive characteristics." *Robinson,* 414 U.S. at 236, 94 S.Ct. 467.

Body-cavity searches have been described as "dehumanizing, demeaning, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1272 (7th Cir.1983) (internal quotation marks omitted). These searches are highly invasive and cannot be characterized as routine. *See Swain v. Spinney,* 117 F.3d 1, 7 (1st Cir.1997). Even in the context of border searches, where officials need no suspicion to conduct most other searches, courts have characterized strip and body-cavity searches as non-routine searches that require various levels of suspicion to be justified. *United States v. Ramos–Saenz,* 36 F.3d 59, 61 (9th Cir.1994); *see also United States v. Montoya de Hernan-*

---

cavity search must be conducted consistently with the *Schmerber* factors"); *Giles v. Ackerman,* 746 F.2d 614, 616 (9th Cir.1984) (stating that *Schmerber* "implies that intrusions into the arrestee's body, including body cavity searches ... are not authorized by arrest alone"); *see also Swain v. Spinney,* 117 F.3d 1, 6 (1st Cir.1997) (stating that *"Robinson* did not hold that all possible searches of an arrestee's body are automatically permissible as a search incident to arrest"); *Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1446 (9th Cir.1991) (stating that *"Robinson* simply did not authorize" arresting officers to conduct a strip and visual body cavity search); *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1271 (7th Cir.1983) (stating that "the *Robinson* court simply did not contemplate the significantly greater intrusions that occur[ ]" in a visual search of an arrestee's anal and vaginal cavities).

Several state courts have similarly concluded that the broad authority of the police to search an arrestee's person incident to arrest is limited by the principles applicable to bodily intrusions set forth in *Schmerber. See Commonwealth v. Gilmore,* 27 Va.App. 320, 498 S.E.2d 464, 469 (1998); *State v. Milligan,* 304 Or. 659, 748 P.2d 130, 135 (1988); *People v. Williams,* 157 Ill.App.3d 496, 109 Ill.Dec. 577, 510 N.E.2d 445, 447–48 (1987); *State v. Baker,* 502 A.2d 489, 492 (Me.1985); *State v. Clark,* 65 Haw. 488, 654 P.2d 355, 361–62 (Haw.1982); *State v. Fontenot,* 383 So.2d 365, 367 (La.1980).

dez, 473 U.S. 531, 541 n. 4, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) (noting that body-cavity searches are not routine border searches).

The dissenting Justice on the Court of Appeals in this case also relies on *Salinas*. *McGee*, 23 S.W.3d at 171 (Hudson, J., dissenting). The dissent found it significant that (1) Rowan had probable cause to believe the appellant was hiding drugs between his buttocks, (2) the expedient way to confirm that fact was to conduct an immediate search, and (3) Rowan tried to protect the appellant's privacy by conducting the search at a fire station. *Ibid.* The dissent explained that it did not think that the search would be any less humiliating if conducted at the jail.

It may be true that the search would not have been any less humiliating if performed at another location. But that is not the appropriate inquiry. What we must decide is whether a routine search incident to arrest permits an officer to perform a body-cavity search. Given the extraordinary and intrusive characteristics of body-cavity searches, I agree with those courts that have found that the *Robinson* line of cases and the search incident to arrest exception do not authorize body-cavity searches. *See, e.g., Swain*, 117 F.3d at 6 (and cases cited therein); *Commonwealth v. Gilmore*, 27 Va.App. 320, 498 S.E.2d 464, 469 n. 3 (1998) (and cases cited therein).

When a search exceeds the scope of the search incident to arrest, the warrant requirement is reinstated. *Coolidge v. New Hampshire*, 403 U.S. 443, 484, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Another exception to the warrant requirement must apply to justify a warrantless body-cavity search. We think that the exigent circum-

stances exception, in the appropriate case, could justify a body-cavity search after an arrest. *Cf. Montoya de Hernandez*, 473 U.S. at 541 n. 4, 105 S.Ct. 3304 (justifying strip searches at the border based on reasonable suspicion that suspect has drugs secreted on her person).

In *Schmerber v. California*, the Supreme Court permitted a warrantless search involving a bodily intrusion on the basis of exigent circumstances. *Schmerber*, 384 U.S. at 770–72, 86 S.Ct. 1826. The case involved the removal of blood from the defendant who had been involved in a collision and arrested for driving while intoxicated. The Court found the search to be permissible because there was a clear indication that the evidence would be found, the officer reasonably could have believed that the evidence would have been destroyed had he sought a warrant, and the search was conducted in a reasonable manner. *Ibid.*

To decide whether an intrusion is reasonable under the Fourth Amendment, we weigh the particular need for the search against the invasion of personal rights. *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). A reviewing court looks at the scope of the intrusion, the manner in which it was conducted, the justification for initiating the search, and the place where the search was conducted. *Ibid.*

Based on these principles, I would hold that a warrantless body-cavity search, even though conducted incident to a lawful arrest, violates the Fourth Amendment unless (1) the police have a clear indication that evidence is located within a suspect's body, (2) the police reasonably believe that the evidence would be destroyed during the delay necessary to obtain a warrant,[2]

---

**2.** We have concluded that this is an objective, not subjective, standard in the context of an

exigent circumstances review. *Colburn v.*

and (3) the search is conducted in a reasonable manner. *See Schmerber,* 384 U.S. at 770–71, 86 S.Ct. 1826.

In the case before us, Officer Rowan received a tip from a concerned citizen that the appellant and two other men were selling crack cocaine. The citizen gave Rowan the names of the appellant and one other man and a detailed description of the clothing of all three. The citizen also told Rowan that the man later identified as the appellant was hiding the crack cocaine between his buttocks. Rowan was able to confirm much of the information he received in the tip. The three men matched the physical description given by the citizen. The two names provided matched the name of the appellant and one of the suspects. Evidence of drug usage and possession was found in the area. The evidence supports finding a clear indication that drugs would be found where the citizen said the drugs would be. *See Schmerber,* 384 U.S. at 770–72, 86 S.Ct. 1826.

Rowan testified that, after he handcuffed the suspects, he was concerned about transporting the three men in the car together. If one suspect possessed illegal drugs and dropped those drugs in the car, it would be difficult to determine which of the three had possessed the drugs. Even Rowan testified that this was not an emergency situation. And it is standard procedure to call for back-up to transport each suspect separately, as it is standard police procedure to check the patrol car before and after a suspect has ridden in the car. Rowan did not call for back-up officers; he transported the appellant to a fire station and performed a highly intrusive search without a warrant. This record does not support a finding that there was a risk of the destruction of evidence. There was no evidence from which a reasonable officer could conclude

*State,* 966 S.W.2d 511, 519 (Tex.Crim.App. 1998).

that the drugs located between the appellant's buttocks would be destroyed during the time necessary to obtain a warrant. *See Schmerber,* 384 U.S. at 770–72, 86 S.Ct. 1826.

Because no warrant was obtained, and because no exception to the warrant requirement is supported by the record, the visual body-cavity search of the appellant at the fire station was unreasonable under the Fourth Amendment. As the Court of Appeals held, the fruits of the illegal search should have been suppressed. Because I would affirm the judgment of the Court of Appeals, I dissent.

