Anthony BELL, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–00–01291–CR, 05–00–01292–CR.

Court of Appeals of Texas,
Dallas.

May 15, 2003.

Discretionary Review Denied
Sept. 24, 2003.

Robert Udashen, for Anthony Bell.

William T. (Bill) Hill, Jr., Bryan Rutherford, for The State of Texas.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION ON REMAND

Opinion by Justice MORRIS.

In these cases, Anthony Bell complains about a visual body cavity search conducted after his arrest. When appellant first appealed his convictions for possession of cocaine with intent to deliver and retaliation, we determined we did not have jurisdiction over the appeals. The Texas Court of Criminal Appeals, however, granted appellant's petition for discretionary review, vacated this Court's judgment, and remanded the case back to us for reconsideration in light of its holding in *Bayless v. State*, 91 S.W.3d 801 (Tex.Crim.App.2002). In *Bayless*, the court held that if a defendant files a timely general notice of appeal, amendments to the notice may be made anytime before the defendant files his brief. *Id.* at 805–06. Due to the holding in *Bayless*, we have jurisdiction over appellant's appeals. Nevertheless, we affirm his convictions.

As police officers in a marked car were driving through an area with high narcotics activity, they saw appellant driving a car without a front license plate. He was not wearing a seat belt. When the officers activated their flashing lights to pull over appellant, he moved his right hand down his back. He continued driving for a block and a half to two blocks before he turned, without signaling, onto another street and stopped.

The arresting officer recognized appellant from previous drug investigations. He had been told that appellant was a drug dealer who carried drugs in his socks and that his associates carried weapons. The officer conducted pat-down searches of appellant and his passenger and searched the car, but he found no weapons or drugs. Appellant began to get irate. The officer arrested him for having no front license plate, not wearing a seat belt, and failing to signal a turn. As the officer drove him to jail, appellant began to sweat profusely despite the fact that the weather was cool. The officer thought appellant was nervous about something. Based on appellant's behavior before and after his arrest and the officer's knowledge of appellant's previous drug involvement, the officer suspected appellant had stuffed narcotics down his pants.

At the jail, the officer obtained permission from a sergeant to strip search appellant. He and approximately three other officers accompanied appellant into a small room used for strip searches. After appellant removed his clothing, he was told to bend over. The arresting officer testified that when appellant bent over, he saw a plastic baggie of crack cocaine hanging between appellant's buttocks. As the officer pulled the baggie out, appellant stated that he was going to shoot the officer and kill him.

Appellant disputed the officer's version of the search. He claimed that other people in the book-in area of the jail could see him as he was strip searched. He also claimed the baggie of crack cocaine was not visible between his buttocks because it was inside his rectum. He stated he had to squat down for the officers three times. The third time, according to appellant, the arresting officer removed the drugs from his rectum while wearing rubber gloves.

In two issues, appellant complains that the trial court erred by denying his motion to suppress. He contends the warrantless visual body cavity search was not supported by reasonable suspicion that he was carrying or concealing contraband. In reviewing a trial court's ruling on a motion to suppress evidence, we apply a standard of review that requires us to give almost total deference to the trial court's determination of historical facts and review de novo the court's application of the law. *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997).

Analysis of any search requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. *See Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (discussing the propriety of visual body cavity searches of prison inmates). To evaluate the reasonableness of a visual body cavity search, therefore, we must consider the scope of the intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted. *See id.; see also McGee v. State*, 105 S.W.3d 609, 616 (Tex.Crim.App.2003) (applying the *Bell* analysis to a post-arrest visual body cavity search). No one factor is dispositive. *See McGee*, 105 S.W.3d at 616.

As for the scope of the intrusion, we must evaluate whether legitimate interests of law enforcement outweighed the "demeaning, dehumanizing, [and] humiliating" intrusiveness of a visual body cavity search. *See id.* at 616. In reviewing the manner of the search, we consider—in part—whether the search was violent and whether the officer had experience in conducting such searches. *See id.* The level of justification necessary for the search varies depending on where the search took place. Searches in prisons, for instance, require less justification because the suspects in those cases possess a diminished expectation of privacy. *See id.* Finally, the search must be conducted in a hygienic environment and should not be conducted in a "public place." *See id. at* 617.

Here, the State acknowledges appellant was subjected to a visual body cavity search, and appellant's brief does not classify the scope of the search as something more invasive. Appellant was under arrest when the search was conducted in a separate, small room at the jail. The officer explained that he suspected appellant was hiding drugs because of his previous drug dealing involvement, his unusual movements in the car before he pulled over, and his odd demeanor before and after his arrest. The record does not indicate the arresting officer had previous experience in conducting visual body cavity searches, but it also does not indicate the search was violent. We conclude the officer's reasonable, individual suspicions, based on his direct observations of appellant, justified the search in this case. The trial court did not err by denying appellant's motion to suppress. We resolve appellant's two issues against him.

We affirm the trial court's judgments.