02-10-497-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00497-CR

 

 


 
 
 Anthony Zane Eatman
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 371st
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

A
jury convicted Appellant Anthony Zane Eatman of the offense of possession of a
controlled substance (methamphetamine) in an amount equal to or greater than
four grams but less than two hundred grams and assessed his punishment at
twenty-five years’ confinement.  The trial court sentenced him accordingly.  In
one point, Appellant contends that the trial court erred by denying his motion
to suppress.  Because we hold that the trial court did not err by denying
Appellant’s motion to suppress, we affirm the trial court’s judgment.

We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.[2] 
We give almost total deference to a trial court’s rulings on questions of
historical fact and application-of-law-to-fact questions that turn on an
evaluation of credibility and demeanor, but we review de novo
application-of-law-to-fact questions that do not turn on credibility and
demeanor.[3]

In
determining whether a trial court’s decision is supported by the record, we
generally consider only evidence adduced at the suppression hearing because the
ruling was based on it rather than evidence introduced later.[4]  But this general rule is
inapplicable when the parties consensually relitigated the suppression issue
during trial on the merits.[5] 
If the State raised the issue at trial either without objection or with
subsequent participation in the inquiry by the defense, the defendant is deemed
to have elected to re-open the evidence, and we may consider the relevant trial
testimony in our review.[6]

The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.[7] 
To suppress evidence because of an alleged Fourth Amendment violation, the
defendant bears the initial burden of producing evidence that rebuts the
presumption of proper police conduct.[8] 
A defendant satisfies this burden by establishing that a search or seizure
occurred without a warrant.[9] 
Once the defendant has made this showing, the burden of proof shifts to the
State, which is then required to establish that the search or seizure was
conducted pursuant to a warrant or was reasonable.[10]

Whether
a search is reasonable is a question of law that we review de novo.[11]  Reasonableness
is measured by examining the totality of the circumstances.[12]  It requires a balancing of
the public interest and the individual’s right to be free from arbitrary
detentions and intrusions.[13] 
A search conducted without a warrant is per se unreasonable unless it
falls within one of the “specifically defined and well-established” exceptions
to the warrant requirement.[14]

Similarly,
under the Fourth Amendment, a warrantless arrest is unreasonable per se
unless it fits into one of a “few specifically established and well delineated
exceptions.”[15] 
A police officer may arrest an individual without a warrant only if probable
cause exists with respect to the individual in question and the arrest falls
within one of the exceptions set out in the code of criminal procedure.[16]  An officer has
probable cause to stop and arrest a driver if he observes the driver commit a
traffic offense.[17]
 Further, any peace officer may make a warrantless arrest of any person found
violating the “Rules of the Road,” that is, subtitle C of title 7 of the
transportation code.[18]  Finally, incident to a
lawful arrest, the police may lawfully search the arrestee’s person.[19]

In
his motion to suppress, Appellant requested the trial court to “[s]uppress all
the evidence seized as a result of the stop and subsequent search” of his
person.  He contended that no probable cause existed for the arrest and that
the stop was not supported by reasonable suspicion.  He further contended that
any and all evidence seized or statements made resulted from “an illegal stop,
illegal arrest, illegal detention and an illegal search.”  He further alleged
that the “stop, search, detention, and subsequent arrest . . . were
pretextual and without a sufficient factual basis.”

When
presenting Appellant’s motion, defense counsel stated that the issues were “the
initial stop by the police officer, the contact made with the police officer to
go further and make the subsequent arrest.”  At the hearing, Officer John Romer
testified that he saw Appellant, whom he identified at trial, drive a mid-sized
SUV into an intersection without stopping at the stop sign.  The SUV completely
crossed the white stop line.  Romer then activated his overhead emergency
lights to conduct a traffic stop.  Appellant remained stopped in the
intersection.  After eliciting this testimony, the prosecutor stated, “Your
Honor, because it’s the State’s understanding that the issue is the stop and
only the stop for this motion to suppress, we will pass the witness at this
point because we believe we’ve covered his issue.”  On cross-examination in the
suppression hearing, defense counsel questioned Romer about a possible 911 call
or some other contact with a tipster.  The trial court denied the motion to
suppress.

At
trial, Romer was the State’s first witness, and the prosecutor revisited the
circumstances of the stop, arrest, and search.  Romer testified that when he and
his partner stopped Appellant, Appellant seemed extremely nervous and very
fidgety; was sweating profusely and acting very jittery; and was moving around
“in a state of almost panic.”  Romer testified that Appellant’s level of
anxiety was unusual for someone who had committed only a traffic violation.

Romer
testified that he watched Appellant from the passenger side of the stopped SUV
while his partner conducted a records check.  Romer testified that Appellant
kept looking around and reaching down toward his pockets, so Romer asked him to
get out of the car so he could perform a patdown search for weapons.  Appellant
got out of the car but was noncompliant during the patdown search.  He kept
trying to reach into his pockets with his hands despite Romer’s verbal and
physical commands to stay in position.  Romer testified that Appellant also
“just kept rambling” and “just acted very, very strange.”  Romer finally
arrested and handcuffed Appellant.  Then Romer performed a search incident to
arrest.  In the right front pocket of Appellant’s jeans, Romer found what
appeared to be marijuana and a methamphetamine pipe.  In the left front pocket
of Appellant’s jeans, Romer found three little bags of what was later determined
to be methamphetamine.

On
cross-examination at trial, Romer testified that five to ten minutes after
Appellant handed him his identification, he arrested Appellant for running the
stop sign.  About thirty or forty-five minutes later, Appellant was transported
to jail.

On
appeal, Appellant contends that the search of his person was not a permissible
search incident to arrest and that the evidence seized should therefore be
suppressed.  Romer testified that he saw Appellant run the stop sign and drive
the SUV completely over the white line.  Thus, Romer observed Appellant commit
a traffic violation.[20]  Romer therefore had
probable cause and statutory authority to arrest Appellant.[21] 
Because he had legal authority to arrest Appellant and did arrest Appellant,
Romer also had legal authority to conduct a search of Appellant’s person
incident to arrest.[22]  We therefore hold that
the trial court did not err by denying Appellant’s motion to suppress and
overrule his sole point.

Having
overruled Appellant’s sole point, we affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  December 8, 2011









[1]See Tex. R. App. P. 47.4.





[2]Amador v. State,
221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).





[3]Amador, 221 S.W.3d
at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson
v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).





[4]See Gutierrez v. State,
221 S.W.3d 680, 687 (Tex. Crim. App. 2007); Rachal v. State, 917 S.W.2d
799, 809 (Tex. Crim. App.), cert. denied, 519 U.S. 1043 (1996).





[5]Gutierrez, 221
S.W.3d at 687; Rachal, 917 S.W.2d at 809.





[6]Rachal, 917 S.W.2d
at 809.





[7]U.S. Const. amend. IV; Wiede
v. State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).





[8]Amador, 221 S.W.3d
at 672; see Young v. State, 283 S.W.3d 854, 872 (Tex. Crim. App.), cert.
denied, 130 S. Ct. 1015 (2009).





[9]Amador, 221 S.W.3d
at 672.





[10]Id. at 672–73; Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005).





[11]Kothe v. State,
152 S.W.3d 54, 62 (Tex. Crim. App. 2004).





[12]Id. at 63.





[13]Id.





[14]McGee v. State,
105 S.W.3d 609, 615 (Tex. Crim. App.), cert. denied, 540 U.S. 1004
(2003); see Best v. State, 118 S.W.3d 857, 862 (Tex. App.—Fort Worth
2003, no pet.).





[15]Minnesota v. Dickerson,
508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993); Torres, 182 S.W.3d
at 901.





[16]Torres, 182 S.W.3d
at 901; see Tex. Code Crim. Proc. Ann. arts. 14.01–.04 (West 2005 &
Supp. 2011).





[17]State v. Gray, 158
S.W.3d 465, 467, 469–70 (Tex. Crim. App. 2005); see State v. Ballman,
157 S.W.3d 65, 70 (Tex. App.—Fort Worth 2004, pet. ref’d).





[18]Tex. Transp. Code Ann. §
543.001 (West 2011).





[19]See Gray, 158
S.W.3d at 470; Buitron v. State, No. 04-99-00343-CR, 2000 WL 84420, at
*1 (Tex. App.—San Antonio Jan. 26, 2000, no pet.) (not designated for
publication) (upholding search incident to arrest after Buitron ran stop sign).





[20]See Tex. Transp.
Code Ann. § 544.010(a), (c) (West 2011).





[21]See id. § 543.001;
Gray, 158 S.W.3d at 467, 469–70; Ballman, 157 S.W.3d at 70.





[22]See Gray, 158
S.W.3d at 470; Buitron, 2000 WL 84420, at *1.