

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00019-CR

THE STATE OF TEXAS                                           APPELLANT

V.

RAYMOND MCCLENDON                                     STATE

----------

### FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
### TRIAL COURT NO. 1318695D

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

The State appeals the trial court's order suppressing results from a blood draw performed on Appellee Raymond McClendon pursuant to the mandatory blood draw provision of the transportation code. *See* Tex. Transp. Code Ann. § 724.012(b) (West 2011). We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

At approximately 2:29 p.m. on March 14, 2013, River Oaks Police Officer Nathan Wilson came upon a traffic accident that had just occurred at the intersection of Jacksboro Highway and River Oaks Boulevard. Because traffic was heavy due to ongoing construction on that particular stretch of the roadway, Officer Wilson immediately blocked oncoming traffic and began an investigation. River Oaks Police Sergeant Moseley, who was also working patrol that afternoon, arrived on the scene shortly after Officer Wilson began his investigation.[2]

Officer Wilson first identified the drivers involved and ascertained whether they needed medical attention. McClendon was identified as the driver of the vehicle that, according to eye-witnesses, rear-ended Arturo Hernandez's vehicle while stopped at a red light. Although he complained of neck and back pain, Hernandez initially advised Officer Wilson that he did not require medical attention. Nevertheless, he later decided to transport himself to the hospital to be examined.

One of the eyewitnesses Officer Wilson interviewed reported that McClendon was stumbling around as he exited his vehicle after the collision. Officer Wilson also personally observed that McClendon displayed signs of

---

[2]According to Officer Wilson, two officers typically work an accident scene and DWI investigation. Although both officers on duty were occupied, they did not call on an outside agency to assist in patrolling River Oaks.

possible drug or alcohol intoxication, i.e., slurred speech and difficulty staying in one place.

When Officer Wilson asked him if he had taken any narcotics, McClendon responded by pulling a bottle of Xanax out of his pocket. Although the label indicated that only six days earlier the bottle had been filled with 90 pills, Officer Wilson testified that the bottle contained only half that amount.

Consequently, Officer Wilson performed a standardized field sobriety test on McClendon. On the Horizontal Gaze Nystagmus (HGN) test—a test that provides clues associated with alcohol, not drugs—McClendon exhibited no clues. However, on the walk-and-turn and one-legged-stand tests, McClendon scored six clues and three clues, respectively.

Based on this information, Officer Wilson read McClendon his statutory warnings and requested a sample of his blood. After McClendon refused the request, Officer Wilson placed him under arrest for driving while intoxicated (DWI). Officer Wilson testified that by this time, approximately 40 minutes had elapsed since the accident had occurred.

While McClendon waited in the back seat of the patrol car, Sergeant Moseley and Officer Wilson inventoried McClendon's vehicle,[3] where they found a full prescription bottle of Olanzapine and a small marijuana cigarette. After a

---

[3]Officer Wilson testified that he did not require Sergeant Moseley's assistance to perform this task and that Sergeant Moseley could have returned to his patrol duties instead of assisting with the inventory.

tow truck arrived at approximately 3:10 p.m., Officer Wilson drove McClendon to the River Oaks Police Department, where Officer Wilson learned that McClendon had two prior convictions for DWI and a prior conviction for intoxication assault. While Officer Wilson acknowledged that he could have obtained a search warrant for a blood draw, he was advised by his sergeant that because of McClendon's prior convictions and the fact that the accident had resulted in an injury, a warrant was not required to authorize the draw. *See* Tex. Transp. Code Ann. § 724.012. So, relying on section 724.012 for a warrantless blood draw, Officer Wilson transported McClendon to John Peter Smith Hospital (JPS), where a nurse drew his blood at 4:02 p.m.

In his testimony, Officer Wilson provided several reasons why obtaining a search warrant to authorize the blood draw would have delayed the process by at least two—and as much as four—hours. First, Officer Wilson testified that he was not permitted to fax a request for search warrants to a magistrate because his sergeant preferred that officers appear in person in front of the magistrate in such circumstances. The process of completing the paperwork for the warrant and taking it to the Fort Worth jail, where the magistrate was located, would have taken 25–30 minutes. During that process McClendon would have had to stay at the River Oaks Police Station with Sergeant Moseley, who was the only other patrol officer on duty in the River Oaks municipality that evening.[4] However,

---

[4]River Oaks does not have a jailer. Of the 17 police officers employed by the River Oaks Police Department, 12 work in the patrol division. Ideally, three

4

Officer Wilson also testified that the River Oaks Police Department could have contacted an outside agency, Sansom Park or Westworth Village, in the event anything requiring police response occurred in River Oaks while Sergeant Moseley was at the station and Officer Wilson was obtaining a warrant.

Additionally, Officer Wilson testified that because warrants do not have priority over the ongoing arraignment proceedings at the jail, once he arrived there he would have experienced between a 45-minute to two-hour delay while awaiting the magistrate's availability to review and sign the warrant. And once he had the warrant in hand, Officer Wilson would have had to return to the River Oaks police station, pick up McClendon, and transport him to JPS to have his blood drawn. Finally, upon arrival at JPS, they would likely have been required to wait until a nurse was available to draw the blood, because trauma patients had priority.

The trial court granted McClendon's motion to suppress the blood test results and entered findings of fact and conclusions of law. This appeal followed.

### III. DISCUSSION

The State argues that the trial court erred by suppressing the blood test results for three reasons: (i) exigent circumstances support the warrantless seizure; (ii) the totality of the circumstances and legal constructs reveal the reasonableness of the mandatory draw of McClendon's blood pursuant to section

---

patrol officers work on each eight-hour shift, but occasionally only two officers work on a particular shift. This was one such occasion.

5

724.012(b) of the transportation code; and (3) Officer Wilson relied in good faith on section 724.012(b), which had not yet been held unconstitutional at the time.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

When the trial court grants a motion to suppress and files accompanying findings of fact and conclusions of law, and the sole witness at the motion to suppress hearing is the arresting officer, the only question before us is whether the trial court properly applied the law to the facts it found. *See State v. Gray*, 158 S.W.3d 465, 467, 469 (Tex. Crim. App. 2005); *Guzman*, 955 S.W.2d at 86–87, 89. This is especially true in a case in which the State has not contested the trial court's findings of fact and the trial court's findings show that the court

6

believed the arresting officer but concluded that the officer's testimony was insufficient as a matter of law.  *See State v. Ross*, 32 S.W.3d 853, 856–58 (Tex. Crim. App. 2000); *Guzman*, 955 S.W.2d at 89.  In this case, we review the trial court's ruling de novo.  *Gray*, 158 S.W.3d at 467, 469.

## B.  Application

### 1.  Exigent Circumstances

The Fourth Amendment protects citizens against "unreasonable searches and seizures" and provides that this right "shall not be violated, and no warrants shall issue" unless they meet certain requirements.  U.S. Const. amend. IV; Tex. Const. art. I, § 9.  Exceptions to the warrant requirement include "voluntary consent to search, search under exigent circumstances, and search incident to arrest."  *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003), *cert. denied*, 540 U.S. 1004 (2003).  It is the State's burden to show that a warrantless search falls within one of these exceptions.  *Id.*

The State argues that exigent circumstances existed due to the accident scene's condition and Officer Wilson and Sergeant Moseley's duties there and because obtaining a warrant would have added "significantly" to the time it took to get a blood sample; River Oaks has a limited amount of law enforcement resources; and McClendon was under the influence of drugs, not alcohol, and drugs have an "unknown" dissipation rate.  The State also argues that exigent circumstances existed because the underlying crime was severe—McClendon had been convicted twice before of DWI and once before of intoxication assault.

7

The trial court found that Officer Wilson was "able to obtain a search warrant from a magistrate via fax but [did] not do so because his sergeant prefers that he obtain warrants in person," that obtaining a warrant in person from a magistrate typically takes between one and two hours, and that Sergeant Moseley could have returned to patrol instead of accompanying Officer Wilson throughout the process. We are to defer to the trial court's findings of fact and determine only if the trial judge correctly applied the law to the facts it found, especially where, as here, only the arresting officer testified. *See Ross*, 32 S.W.3d at 856–58; *Guzman*, 955 S.W.2d at 89.

Officer Wilson's failure to obtain a warrant because his sergeant prefers that officers obtain "face-time" with the judge does not to create an exigent circumstance. *See, e.g., Parker v. State*, 206 S.W.3d 593, 598 n.21 (Tex. Crim. App. 2006) (stating that exigent circumstances do not meet Fourth Amendment standards if the government deliberately creates them). Nor does the deliberate scheduling of only two patrol officers on that evening shift constitute an exigent circumstance, for the same reason. *See id.* Furthermore, Officer Wilson acknowledged that they could call upon nearby police agencies for assistance when necessary, and as the trial court noted, Sergeant Moseley could have returned to patrol.[5]

---

[5]Even if Sergeant Moseley had been required to act as the jailer, thereby leaving no officer on patrol, Officer Wilson testified that it was their general practice for both officers on duty to work an accident scene, even if they were the only two officers on duty at the time.

The State further argues that "drug impairment appears to defy precise quantification regarding absorption/metabolization/elimination" and so it would have been "impossible" for Officer Wilson to consider the dissipation of Xanax during the investigatory phase and the reasonableness of the impact of additional delay. There was no evidence offered at the suppression hearing regarding the dissipation rate of Xanax, except for the testimony of Officer Wilson that he personally did not know the rate of dissipation of Xanax—or of alcohol, for that matter. Instead, the State now relies upon other cases in which experts testified as to its dissipation rate. The State carried the burden of showing an exigent circumstance. It had the opportunity to present evidence that the rate of dissipation of Xanax cannot be quantified, or that it dissipates so quickly as to create an exigent circumstance, but it chose not do so. *See McGee*, 105 S.W.3d at 615. Consequently, this argument is not persuasive.

Finally, the State argues that the severity of the underlying crime—felony DWI—supports finding that exigent circumstances existed. It refers us to *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S. Ct. 2091, 2099 (1984), which held that an important factor in determining whether an exigency exists is "the gravity of the underlying offense for which the arrest is being made." But *Welsh* specifically reasoned that while the "nature of the underlying offense" is an important factor, it is not a sufficient factor in and of itself to create exigency. *Id.* at 751–53, 104 S. Ct. at 2098–99; *see also State v. Taylor*, No. 02-14-00456-CR, 2015 WL

9

4504806, at *2–3 (Tex. App.—Fort Worth July 23, 2015, pet. ref'd) (mem. op., not designated for publication) (discussing *Welsh*).

We cannot conclude that the trial court erred in its application of the law to the facts by finding that exigent circumstances did not exist to support the warrantless, nonconsensual seizure of McClendon's blood. We therefore overrule the State's first point.

### 2. Section 724.012 of the Transportation Code

In its remaining three points, the State relies upon section 724.012 of the transportation code to justify the warrantless and nonconsensual blood draw. But the court of criminal appeals recently held that warrantless blood or breath samples taken without consent solely in reliance on transportation code provisions such as section 724.012 violate the warrant requirement of the Fourth Amendment. *State v. Villarreal*, 475 S.W.3d 784, 787, 804 (Tex. Crim. App. 2014).[6] Officer Wilson's good-faith belief that the statute authorized the warrantless search does not overcome the exclusionary rule. *See Lewis v. State*, No. 02-13-00416-CR, 2015 WL 1119966, at *2 (Tex. App.—Fort Worth Mar. 12, 2015, pet. ref'd) (mem. op., not designated for publication) (citing *Burks v. State*, 454 S.W.3d 705, 709 (Tex. App.—Fort Worth 2015, pet. ref'd)). We therefore overrule the State's second, third, and fourth points.

---

[6]At the time this case was submitted, the court of criminal appeals had granted rehearing of the *Villarreal* decision. But on December 16, 2015, the court of criminal appeals concluded that rehearing was improvidently granted and denied the State's motion for rehearing.

## IV.  CONCLUSION

We hold that the trial court did not err by granting McClendon's motion to suppress the results of the warrantless blood draw, and we affirm the trial court's order.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 25, 2016