

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-07-121-CR
### NO. 2-07-122-CR
### NO. 2-07-123-CR

DERRICK DEVON DAVIS                                             APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

### FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

The trial court convicted Appellant Derrick Devon Davis upon his pleas of guilty of possession of body armor by a felon, unlawful possession of a firearm, and possession of a controlled substance, namely, cocaine, in the amount of four or more but less than two hundred grams.  Each offense was charged in

---

[1] *See* TEX. R. APP. P. 47.4.

a separate indictment. Two indictments, those charging the unlawful possession of a firearm and possession of cocaine, also contained a repeat offender notice, to which Appellant pled true. The trial court sentenced him to seven years' confinement in each case, and Appellant reserved the right to appeal the trial court's denial of his motion to suppress in each case.

In all three cases, Appellant argues that the trial court erred in denying his motion to suppress because, for various reasons, the search was unlawful. Because the trial court did not err by denying the motion to suppress, we affirm the trial court's judgments.

Grand Prairie Police Officers Lovelace and Hickman were at the South Budget Suites Motel in Grand Prairie, Texas, investigating a matter unrelated to this case when they received a complaint from a resident of the motel about loud music coming from one of the suites. The officers determined that the music was coming from suite 1069, Appellant's suite. There was also evidence that this was his residence. The officers looked through the windows and could see people in the front room. Lovelace knocked on the door, and Appellant opened the door about a foot. Lovelace detected the odor of marijuana. He testified at the suppression hearing that "smoke just came pouring out of the room." Appellant initially denied that he was smoking marijuana; he later admitted to Lovelace that he and the other occupants of the

2

room had been smoking marijuana but claimed that it had all been smoked and that he did not have any more in the suite.

The officers entered Appellant's suite without asking permission and without Appellant's invitation. The suite had a common living room/kitchen area and a bedroom and bathroom beyond it. After they entered the front room, the officers found a woman inside the bedroom area and a man in the bathroom. Lovelace saw baggies, scales, bits of marijuana, and marijuana seeds lying on the table in plain view. The officers did not find any burning marijuana. Nor is there any mention of the officers' observations of music playing or any means of playing music after they entered Appellant's suite.

Lovelace asked Appellant if he had more marijuana. Appellant said no, and Lovelace responded that he knew that Appellant was lying. Appellant walked to the refrigerator, opened the freezer door, and took out a small baggie of marijuana. Lovelace saw other bags in the freezer and proceeded to search the freezer, finding a larger bag of marijuana and a small baggie of crack cocaine.

Hickman asked Appellant if there were any guns in the suite. Appellant told the officers that there were guns in the bedroom. The officers handcuffed all three occupants of the front room and searched the bedroom. Lovelace found body armor on the bed, a photograph of Appellant wearing the body

3

armor, a revolver between the mattress and box springs, and under the bed, surrounded by clothing and other items, a rifle.

The officers arrested Appellant at that point. Appellant was charged with possession of body armor by a felon, unlawful possession of a firearm, and possession of a controlled substance.

Appellant filed a motion to suppress in each case, contending that he was arrested, any statements were taken, and any evidence was seized "without lawful warrant, probable cause, or other lawful authority in violation of" the federal and state constitutions. After the hearing on Appellant's motion to suppress, the trial court entered oral findings of fact and conclusions of law into the record:

> [O]n the night in question, the officers were stopped by a resident of the Budget Suites who told the officers that noise was coming out of an apartment that was being very loud [and] that was disturbing his sleep.
>
> . . . [T]he City of Grand Prairie has an ordinance which states that there cannot be a lot of noise at various apartment complexes and hotel/motels. The officer at this time went with the party to his apartment [and] heard noise [which] he determined to be coming from apartment 1069. Went to this apartment, verified that this, in fact, was the apartment in question. Knocked on the door, the door was opened. [Appellant] was the occupant of the apartment.
>
> When the door was opened, the officer observed smoke, as he states, pouring out of the room. He smelled a strong odor of marijuana. He asked [Appellant] if, in fact, he did have any

4

marijuana. [Appellant] at first answered no, but then admitted to smoking marijuana. Told the officer that he didn't have any[ ]more. Officer Lovelace and Hickman together with the security officer went into the apartment.

At that time the officer observed in plain view baggies, scales, [and] marijuana on the dining room table. He asked [Appellant] if there was any additional contraband in the apartment and Mr. Davis told him that there was a little marijuana in the freezer. They went to the freezer, opened up the freezer, and they found not only marijuana, but crack cocaine.

At that point the officer asked [Appellant] if there were any weapons in the apartment. [Appellant] did tell the officer that there were weapons in the bedroom. The officer at that time detained all of the occupants, which included two other people, a male and a female. They went into the bedroom, found a bullet proof vest on the bed, underneath the bed they found a gun and a rifle.

The apartment or suite . . . was registered to [Appellant]. [He] was placed under arrest. . . . [W]hen he was placed under arrest the officers found not only the room key, but also some additional contraband in [his] pocket. All of this took approximately 33 minutes from the time that the officer was notified of the noise to the time of the arrest of [Appellant].

These basically were the facts. . . .

. . . . The Court's opinion is first of all, that there w[ere] extenuating circumstances and there was an emergency at this time. That the officers were called legally because of the noise and that there was such a noise ordinance in the City of Grand Prairie. That once they knocked on the door and once the door was opened and that they smelled a strong odor of marijuana, that they did have reasonable suspicion and probable cause to enter the suite.

And upon entering the suite in full view the officers found contraband. And after questioning [Appellant], [he] admitted that he did, in fact, possess the contraband and . . . — and I might add

5

was very cooperative with the officers by telling them all this and the fact that he told them that he also had weapons in there.

[Appellant], I believe, was not coerced or was not threatened in order to give this information. As such, the Court is going to make a finding that your Motion to Suppress is denied, that the officers did have an emergency to be in there, that there were extenuating circumstances. Which meant that they did not have the time or were not required to go back out, shut everything down, and request that a search warrant be issued.

That's going to be the order of the Court.

In five points in each case, Appellant argues that the trial court erred by denying his motion to suppress evidence of the body armor, the controlled substances, and the firearm because the evidence was discovered as the result of custodial interrogation conducted without Appellant's being advised of his rights, because the officers failed to obtain a warrant, and because the warrantless searches were not justified by consent or exigent circumstances, as searches incident to arrest, or on any other basis.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[2] In reviewing the trial court's decision, we do not engage in our own factual review.[3] The trial judge is the sole trier of fact

---

[2] *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[3] *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).

6

and judge of the credibility of the witnesses and the weight to be given their testimony.[4]  Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.[5]  But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo.[6]

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.[7]  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial

---

[4] *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).

[5] *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002).

[6] *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652-53.

[7] *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

7

court's ruling, supports those fact findings.[8]  We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.[9]

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.[10]

As Appellant reminds us, the Fourth Amendment grants individuals "the right to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."[11]  Likewise, the Texas Constitution provides that "the people shall be secure in their persons, houses, papers, and possessions from all unreasonable seizures or searches, no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without, probable cause, supported by oath or affirmation."[12]  Article 38.23(a) of the Texas Code of Criminal Procedure

---

[8] *Kelly*, 204 S.W.3d at 818-19.

[9] *Id*. at 819.

[10] *State v. Stevens*, 235 S.W.3d 736, 740  (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

[11] U.S. CONST. amend. IV.

[12] TEX. CONST. art. I, § 9.

8

prohibits use of any evidence secured in violation of the constitution or laws of Texas or of the United States.[13] That is, article 38.23(a) is a statutory exclusionary rule.[14]

As Appellant also points out, the odor of burning marijuana, without more, has been held insufficient to give law enforcement officers probable cause to believe that a specific person has committed the offense of possession of marijuana in the officer's presence.[15] Consequently, the mere odor of burning marijuana, without more, does not permit officers to conduct a search of a person's home without a search warrant.[16]

Article I, section 9 of the Texas Constitution contains no requirement that a seizure or search be authorized by a warrant, and the Texas Court of Criminal Appeals has held that a seizure or search that is otherwise reasonable does not violate that provision simply because it was not authorized by a warrant.[17] But the Texas Court of Criminal Appeals has also recognized that "[p]ursuant to the Fourth Amendment, a warrantless search of either a person or property is

---

[13] TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005).

[14] *See Miles v. State*, 241 S.W.3d 28, 36 (Tex. Crim. App. 2007).

[15] *See State v. Steelman*, 93 S.W.3d 102, 108 (Tex. Crim. App. 2002).

[16] *Id.*

[17] *Hulit v. State*, 982 S.W.2d 431, 436 (Tex. Crim. App. 1998).

considered per se unreasonable subject to a 'few specifically defined and well established exceptions.'"[18]

In the case now before this court, the trial court entered oral findings of fact into the record. The officers were called regarding a noise complaint, which was a violation of a municipal ordinance and a misdemeanor offense.[19] The noise was coming from Appellant's suite. When Appellant opened the door, the officers became aware that there was probable cause to believe that another offense was being committed in their presence, possession of marijuana, because the marijuana smoke "poured" out.

We have two different legal justifications at play here. One, the law allows a police officer to arrest for an offense committed in the officer's presence,[20] and two, the law also allows an officer to search even a home if

---

[18] *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993)), *cert. denied*, 540 U.S. 1004 (2003).

[19] GRAND PRAIRIE, TEX., CODE OF ORDINANCES ch. 13, art. XIII, §§ 13-277, 13-285 (2007), *available at* http://www.municode.com/resources/gateway.asp ?sid=43&pid=10142.

[20] TEX. CODE CRIM. PROC. ANN. art. 14.01 (Vernon 2005); *Griffin v. State*, 215 S.W.3d 403, 410 (Tex. Crim. App. 2006).

both probable cause that a crime is being committed and exigent circumstances are present.[21]  As the Texas Court of Criminal Appeals has succinctly explained,

> The Fourth Amendment grants individuals "the right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  In determining the reasonableness of a search or seizure, the actions of police are judged by balancing the individual's privacy interest against the Government's interest in law enforcement.  The balancing test is utilized to ensure that an individual's Fourth Amendment rights are not subjected to "invasions at the unfettered discretion of officers in the field."
>
> There is a strong preference for searches to be administered pursuant to a warrant.  In fact, the search of a residence without a judicially authorized warrant is presumptively unreasonable.  However, this does not mean all searches must necessarily be conducted under the authority of a warrant.  For example, if police have probable cause coupled with an exigent circumstance, or they have obtained voluntary consent, or they conduct a search incident to a lawful arrest, the Fourth Amendment will tolerate a warrantless search.  Yet, the warrant requirement is not lightly set aside, and the State shoulders the burden to prove that an exception to the warrant requirement applies.[22]

*Parker v. State* is, in many respects, similar to the case now before this court.[23]  On appeal, Parker argued that "'[w]hile the odor of marijuana, coupled with other evidence, may give rise to probable cause, the odor of marijuana

---

[21] *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007) (citing *McGee*, 105 S.W.3d at 615).

[22] *Id.* at 684-85 (citations omitted).

[23] 206 S.W.3d 593 (Tex. Crim. App. 2006).

alone does not justify a warrantless search of a residence'" and that "'[t]he case law in Texas regarding the existence of probable cause and exigent circumstances sufficient to allow officers to make a warrantless entry into a residence, based on the smell of contraband is, at first glance, confusing.'"[24] The Texas Court of Criminal Appeals granted review "in the hope of dispelling any lingering confusion concerning the existence of probable cause to cross the threshold of a home when officers smell the odor of contraband emanating from that residence."[25] The court explained,

> Appellant's confusion may stem from the fact that the standards for a warrantless entry into a home differ from those for a warrantless arrest. Each action requires the police to jump over two distinct hurdles. In both situations the first hurdle involves the existence of probable cause to believe that some offense has been or is being committed, but differs depending on whether probable cause points to a person (arrest) or a location (search). The second hurdle differs depending on whether the officer is crossing the threshold of a home without a warrant to investigate an offense, or he is making a warrantless arrest.

> Under Texas law, a police officer must have both probable cause with respect to the person being arrested, plus statutory authority to make that arrest. To establish probable cause to arrest, the evidence must show that "'at that moment [of the arrest] the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested

---

[24] *Id.* at 596.

[25] *Id.*

12

person had committed or was committing an offense.'"  There is, of course, a significant difference between the notion that there is probable cause to believe that someone has committed an offense and probable cause to believe that this particular person has committed an offense.  Probable cause to arrest must point like a beacon toward the specific person being arrested.  Second, the police officer who lacks a warrant to arrest must have statutory authority to make such a warrantless arrest.

On the other hand, when the question is probable cause to cross the threshold of a private residence, probable cause may point to the location, but not necessarily a specific person.  Again, the State must leap two hurdles.  In *Estrada v. State*, this Court recently reiterated the well-established probable cause standard that applies to a warrantless entry or search of a specific location: "'Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found.'"  Probable cause that points like a beacon toward the location (but not necessarily any particular person) is the first hurdle.  The second hurdle is that exigent circumstances, those which justify an immediate need to enter a residence without first obtaining a search warrant, must also exist.  If either probable cause or exigent circumstances are not established, a warrantless entry will not pass muster under the Fourth Amendment.

Appellant relies on this Court's decision in *State v. Steelman* as support for his argument that, as a matter of law, the odor of marihuana by itself is insufficient to establish probable cause for an officer to enter a home without a warrant.

Appellant reads too much into that case.  In *Steelman*, police officers entered the defendant's home and arrested everyone in the room after smelling the odor of marihuana when the defendant opened the door.  We concluded that the odor of marihuana emanating from a home cannot, by itself, justify a reasonable belief that any particular individual present had committed or was committing any particular offense.  In *Steelman* we noted that

13

"'odors alone do not authorize a search without a warrant.'" But we did not, as appellant argues, find that the odor of marihuana alone was insufficient to establish probable cause to believe that someone had committed or was then committing the offense of possession of marihuana. With respect to a warrantless entry and arrest, *Steelman* simply reiterated what previously had been well established: the odor of marihuana emanating from a residence, by itself, is insufficient to establish both the probable cause and statutory authority required for a warrantless arrest of a particular person inside.[26]

In the case before us, when the officers heard loud music coming from Appellant's suite, a crime—that is, a violation of the municipal noise ordinance—was being committed in their presence. They were justified in knocking on the door to Appellant's suite to confront him, to instruct him to lower the volume of the music, and to issue him a citation. When Appellant opened the door, the officers were greeted with marijuana smoke. We note that the officers testified that fresh marijuana smoke continued to emanate from the room despite Appellant's claim that he and the other occupants had smoked all the marijuana they had.

Although the smoke did not provide probable cause to arrest a specific person, it did provide probable cause to investigate the marijuana offense. And, as the State points out, the Texas Court of Criminal Appeals has held that the odor of marijuana, coupled with a loud music complaint, is sufficient to justify

---

[26] *Id.* at 596-98 (citations omitted).

warrantless entry into a residence to investigate.[27]  Based on the above reasoning, we hold that the trial court did not abuse its discretion by concluding that the officers legally entered Appellant's suite.

After the officers entered the room, Lovelace saw baggies, scales, bits of marijuana, and marijuana seeds in plain view.[28] He therefore saw an offense, possession of marijuana, committed within his view.[29] Lovelace testified that, having seen the baggies and the scales, he believed that there was more marijuana than a small amount for personal use.  (Although Appellant was being investigated, he had not been placed under arrest at this point.) Lovelace asked Appellant if he had any more marijuana, and Appellant eventually walked to the freezer, opened it, and produced a small baggie of marijuana.  Lovelace could see additional bags in the freezer before Appellant closed the door.  Lovelace opened the freezer again to verify the other baggies of marijuana, and he also found a small baggie of what he believed to be crack cocaine.  Because the officer was legitimately in the suite when he saw the bags in the freezer, his

---

[27] *Estrada*, 154 S.W.3d at 609–10.

[28] *See Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000) (discussing the plain view doctrine)

[29] *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 2005) (allowing officer to arrest for offense committed within his or her view).

15

observations and seizure of the drugs can be justified under the plain view doctrine.[30]

At this point, Lovelace was concerned about weapons because, he testified, it is fairly common if large amounts of illegal narcotics are present to have weapons involved. The other officer, Hickman, asked if there were any guns, and Appellant replied that there were guns in the bedroom. Before searching for guns, the officers handcuffed everyone for the officers' safety.

Lovelace admitted that Appellant had not consented to his entry into the room and that he did not give Appellant *Miranda*[31] warnings when he first handcuffed him. He testified that because Appellant and the others had been handcuffed merely for the safety of the officers, they were not under arrest, despite the fact that the officers had already seen scales, marijuana seeds and residue, a small baggie of marijuana, a large baggie of marijuana, and crack cocaine. Lovelace did concede that Appellant was not free to leave and that, given that Lovelace was in uniform with a badge and a gun, it was clear that Appellant could not walk out the door.

---

[30] *See Walter*, 28 S.W.3d at 541.

[31] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

Lovelace admitted that from the time Appellant first opened the door, and, certainly, from the time the officers entered the room, the two police officers and the security guard who accompanied them had control of the situation. There was no scurrying about and no attempt to hide or destroy anything.

We conclude that from the point that Appellant was handcuffed and clearly not free to leave, he was in custody.[32] The police officers were obligated to warn him of his right to remain silent and his right to counsel before asking any further questions.[33]

After handcuffing all persons present, Lovelace asked Appellant where the guns were, and Appellant told him they were under the bed. While he was looking for the guns, Lovelace found a bulletproof vest carrier that had ballistic panels in it. It was lying on top of the bed. Lovelace testified that it was

_____

[32] *See Rosalez v. State*, 875 S.W.2d 705, 718 (Tex. App.—Dallas 1993, pet. ref'd) (holding Rosalez was "arrested at the moment Hughey physically restrained him and secured him with handcuffs"); *see California v. Hodari D.*, 499 U.S. 621, 626-28, 111 S. Ct. 1547, 1551 (1991) (holding person is arrested for Fourth Amendment purposes when his movement is restrained by peace officer's application of physical force or he submits to an assertion of authority by peace officer); *Amores v. State*, 816 S.W.2d 407, 411 (Tex. Crim. App. 1991) (holding arrest occurs when person's liberty of movement is restricted or restrained).

[33] *Miranda*, 384 U.S. at 478-79, 86 S. Ct. at 1630.

basically body armor. Because Lovelace had not yet found the firearms, he asked Appellant again where they were and was given a more specific description of their location.

Lovelace did not testify that he searched the area within the reach of the three inhabitants of the room for his own safety. In fact, he admitted that the guns and armor were nowhere within the wingspan or the immediate area of Appellant when Lovelace entered the suite. All three suspects were in the living room when Lovelace went into the bedroom to search for weapons. After discovering the armor and the guns and after arresting but before transporting Appellant, Lovelace learned that Appellant was a convicted felon. Not until that point did Lovelace realize that he had viewed an offense when he saw the armor and the firearms.

Hickman's questions about the presence of firearms and Lovelace's about the presence of contraband were all noncustodial inquiries, occurring before Appellant was handcuffed. Custodial inquiries related only to the exact location of the weapons in the bedroom. The officers already knew there were firearms in the bedroom; it would be unreasonable to expect them to not retrieve the weapons. Although the question regarding their exact location was asked after the three suspects were in handcuffs, the question served to limit the intended search, not to incriminate Appellant. The armor was in plain view in the

18

bedroom and was observed as a result of the officers' prior knowledge that there were weapons somewhere in the bedroom.[34]

Because we must uphold the trial court's ruling on a motion to suppress if it is supported by the record and correct under any theory of law applicable to the case,[35] we overrule all of Appellant's points and affirm the trial court's judgments.

                                                    LEE ANN DAUPHINOT
                                                    JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED:  April 24, 2008

---

[34] *See Walter*, 28 S.W.3d at 541.

[35] *See Stevens*, 235 S.W.3d at 740; *Armendariz*, 123 S.W.3d at 404.

19