**Affirm and Opinion Filed July 26, 2013**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-01675-CR**

**ALJANON LARAY SMITH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F10-25739-X**

## OPINION

Before Justices FitzGerald, Francis, and Lewis
Opinion by Justice FitzGerald

Appellant was charged with possession of a controlled substance, enhanced by two prior felony convictions. Appellant filed a motion to suppress, and following a hearing, the court denied the motion. Appellant subsequently pleaded guilty pursuant to a negotiated plea agreement in which the State agreed to dismiss the enhancement paragraphs and was sentenced to four years' imprisonment. In a single issue on appeal, appellant asserts the trial court erred in denying his motion to suppress. Finding no reversible error, we affirm the trial court's order.

## BACKGROUND

At the time of appellant's arrest, Officer Randall Hawkins, an officer with the Garland Police Department gang unit, had been investigating appellant for suspected drug crime for three to four weeks. On the night in question, Officer Hawkins was patrolling the location around appellant's residence when he noticed a small SUV illegally parked in a cul-de-sac. As he pulled

up behind the vehicle, he noticed that there were three people inside — a male in the driver's seat, a female in the front passenger seat, and appellant in the back seat. As a gang unit officer, Officer Hawkins was aware that appellant was a member of the 5-7 Crip gang, had prior drug convictions, had run from the police in the past, and had been previously arrested for evading arrest. Because it was dark, Officer Hawkins called for back-up and removed the three individuals from the vehicle. For safety reasons, the two males were placed in separate squad cars but were not handcuffed. The female remained standing in front of one of the squad cars. Officer Hawkins determined that the female was the owner of the SUV and requested her consent to search. She consented, but a search did not reveal anything except a clear, plastic capsule with a small amount of unidentified powder residue around the edges. The female and the other male were allowed to leave.

Appellant remained in the back of one of the squad cars. Officer Hawkins determined, based on his experience as a police officer, appellant's slurred speech and exaggerated movements, that appellant was intoxicated on something other than alcohol.

While appellant was still in the back of the patrol car, Officer Hawkins decided to knock on the door of appellant's residence to request consent to search the home. Appellant's fianceé, Lanail Richardson, answered the door. Officer Hawkins told Richardson he was conducting a narcotics investigation and had detained appellant outside. Richardson invited him inside.

When Officer Hawkins stepped inside the residence, he saw a glass coffee table in the living room. A razor blade with a white powdery substance and a plastic bag full of pills were in plain view on top of the table. Officer Hawkins asked Richardson about the ownership of the home. Richardson told him the house belonged to appellant's grandmother, but she let them live there because she was in a nursing home and Richardson paid the bills for the house.

When Officer Hawkins requested Richardson's consent to search the home, she agreed. At that point, the officer asked Richardson about the bag of pills on the coffee table. Richardson told the officer that the pills were medicine for appellant, who had an abscessed tooth. Officer Hawkins opened a small round "Christmas tin" that was also on the coffee table. When he removed the lid from the tin, Officer Hawkins discovered rocks of crack and a digital scale. Richardson said she did not know the drugs were there and denied that they were hers. When Officer Hawkins asked Richardson where appellant kept his drugs. Richardson told him to look in a shoe box in the bedroom. Officer Hawkins found the shoe box, but there were no additional drugs inside. Based on Richardson's statement that the drugs were not hers, Officer Hawkins then arrested appellant for possession of a controlled substance.

## DISCUSSION

In his sole issue, appellant argues the trial court erred in denying his motion to suppress because the warrantless search of his home was unreasonable. In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Although we give almost total deference to the trial court's determination of historical facts, we conduct a de novo review of the trial court's application of the law to those facts. *Wilson*, 311 S.W.3d at 458; *Carmouche*, 10 S.W.3d at 327. All purely legal questions are reviewed de novo, including the application of the law of search and seizure. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). The trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Guzman v State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

There is a strong preference for police to administer searches and seizures pursuant to a warrant. *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). Pursuant to the Fourth Amendment, warrantless searches and seizures inside a residence are presumptively unreasonable, subject to a "few specifically defined and well established exceptions." *See McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)). These exceptions include: exigent circumstances, voluntary consent to search, and search incident to arrest. *See Gutierrez*, 221 S.W.3d at 685; *McGee*, 105 S.W.3d at 615; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). The State bears the burden to prove that a warrant exception applies. *McGee*, 105 S.W.3d at 615. The validity of consent is a question of fact to be determined from all the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 40 (1996); *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991).

Here, the record supports the trial court's conclusion that there was consent to the warrantless search of the home. Officer Hawkins testified that when he knocked on the door of the residence, Richardson opened the door and "readily invited" him into the house. After he determined that Richardson had control over the house and the authority to consent, Officer Hawkins requested and was given consent to search.

Richardson gave a sworn statement to the police on the day of the offense. She subsequently made another affidavit, which appellant attached to his motion to suppress.[1] The State attached Richardson's original statement to its response. Although Richardson did not testify at the hearing, and the affidavits were not admitted into evidence, the State requested and received permission to refer to the affidavits in its argument to the court.

Richardson's affidavits give two differing accounts of what transpired. But in both versions, Richardson states that she gave the officers permission to search without their even

---

[1] Appellant's affidavit was also attached to the motion.

asking for it. Appellant insists the lack of voluntary consent to search the house is established by the version of the Richardson affidavit advanced by the defense. In this affidavit, Richardson states that Officer Hawkins threatened to "put it all on her" if she did not tell him whether there was anything in the house. Appellant also relies on his affidavit, which states that Officer Hawkins requested his consent to search the house and consent was denied. Officer Hawkins, however, testified that he did not ask appellant for his consent to search because appellant was high. And he further testified that he did not threaten Richardson when he requested her consent to search. Assuming the trial court considered the affidavits, it appears the trial judge found Officer Hawkins's testimony to be the more credible version of events. Because factual determinations based on an evaluation of credibility are viewed in the light most favorable to the trial court's ruling, we must likewise credit Hawkins's testimony over appellant and Richardson. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).

Appellant also argues that his initial detention was illegal, and therefore, any subsequent actions were illegal. We disagree.

A police officer may lawfully stop a vehicle based upon probable cause to believe a traffic violation has occurred. *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). A traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment to the United States Constitution and consequently must be reasonable. *Delaware v. Prouse*, 440 U.S. 648, 653–54 (1979); *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997).

Traffic stops are analogous to investigative detentions, and we analyze them as such when determining whether they pass constitutional muster. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). We use the two-prong analysis from *Terry v. Ohio* to decide the reasonableness of an investigative detention. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968); *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). Under *Terry*, we first must decide whether an officer's

–5–

action was justified at its inception. *Terry*, 392 U.S. at 19–20. If so, we determine whether the search was reasonably related in scope to the circumstances that justified the stop in the first place. *Id.*

The general rule we use to decide whether the scope of a traffic stop is reasonable is that the detention can last no longer than necessary to effect the purpose of the stop. *Kothe*, 152 S.W.3d at 63. During even routine traffic stops, a police officer may request certain information from a driver, such as a driver's license and car registration, and may conduct a computer check on that information. *Id*. The detaining officer also may question the vehicle's occupants regarding their identities, travel plans, and ownership of the vehicle. *Id*. at 67 n. 36. Once the original purpose for the stop is exhausted, police may not unnecessarily detain drivers solely in hopes of finding evidence of some other crime. *Kothe*, 152 S.W.3d at 64.

But even after the purpose of a stop has ended, an officer may request consent to search a vehicle. *Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *James v. State*, 102 S.W.3d 162, 173 (Tex. App.—Fort Worth 2003, pet. ref'd). If consent is refused, the officer may not detain the occupants or the vehicle further without reasonable suspicion of some criminal activity. *Simpson*, 29 S.W.3d at 328. A search incident to consent, however, is not unreasonable. *See Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).

It is the actual traffic violation that justifies the initial detention. *See McVickers* v. *State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993). If, during a valid traffic stop and detention, an officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified. *See Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd); *Davis*, 947 S.W.2d at 244.

In the present case, Officer Hawkins made contact with appellant and the other occupants of the vehicle because the vehicle was illegally parked and obstructing traffic. Because it was dark and appellant had a history of running from the police, Officer Hawkins placed the two male occupants in separate patrol cars for officer safety. Officer Hawkins requested consent to search the vehicle, and the owner consented. When the search yielded nothing, the owner of the vehicle and the other passenger were allowed to leave. There is nothing to establish that this detention exceeded the reasonable scope of the stop's original purpose.

The State maintains the search of the house was independent of the initial traffic stop. Officer Hawkins testified that the initial traffic stop had nothing to do with the search of the house. During the officer's testimony, the court inquired, "[i]f you had let the defendant go when you let everyone else go, would you still have gone to the front door and talked to Ms. Richardson?" The officer responded affirmatively.

But even if we do not view the stop and the search as completely independent events, we cannot conclude appellant's continued detention was unreasonable. During the time between the initial approach of the vehicle, and the consensual search of the vehicle, Officer Hawkins determined that appellant was "high" on a drug other than alcohol. Thus, while the initial traffic violation and consensual search provided the initial basis for the officer's reasonable detention of appellant, after discovering that appellant was intoxicated, the officer had a reasonable basis to continue to detain appellant. *See Davis*, 947 S.W.2d at 244.

Appellant's sole issue is overruled. The trial court's order denying the motion to suppress is affirmed.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
111675F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALJANON LARAY SMITH, Appellant

No. 05-11-01675-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F10-25739-X.
Opinion delivered by Justice FitzGerald.
Justices Francis and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 26, 2013

/Kerry P. FitzGerald
KERRY P. FITZGERALD
JUSTICE