In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00401-CR

_____

DAVID WEST GAUBATZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 253rd District Court
Liberty County, Texas
Trial Cause No. CR29957

**MEMORANDUM OPINION**

David West Gaubatz, appellant, was indicted for the offense of driving while

intoxicated, third or more. *See* Tex. Penal Code Ann. §§ 12.42, 49.09 (West Supp.

2014).[1] Prior to trial, Gaubatz filed a motion to suppress the blood test results from

blood taken without a warrant and without his permission. He asserted that the

blood draw was an unreasonable search and seizure in violation of the Fourth

---

[1]In this opinion we cite to the current version of the statutes as the
amendments to the statutes do not apply to this appeal.

1

Amendment to the United States Constitution and article 1, section 9 of the Texas Constitution. After a hearing, the trial court denied the motion to suppress. Gaubatz entered a guilty plea. There was no agreement as to punishment, and after obtaining a pre-sentence report, the trial court held a sentencing hearing. The court found Gaubatz guilty of the third-degree felony offense of driving while intoxicated, third or more, and sentenced him to six years in the Texas Department of Criminal Justice-Institutional Division. Gaubatz filed a notice of appeal.

In three issues on appeal, Gaubatz argues that (1) "there was no probable cause" for the Trooper to "stop and remov[e] [Gaubatz] from the vehicle[,]" (2) that the motion to suppress the blood test results should have been granted, and (3) that the mandatory draw or implied consent statute violates the Fourth Amendment to the United States Constitution. We conclude that there was probable cause to stop and detain Gaubatz, and the mandatory draw or implied consent statute does not on its face violate the Fourth Amendment. Nevertheless, we further conclude that the trial court erred in failing to suppress the evidence because the State failed to meet its burden to establish an exception to the warrantless blood draw in this case.

A Texas State Trooper, Boyd Lamb, Jr., testified on behalf of the State at the motion to suppress hearing.[2] According to the Trooper, on or about midnight on August 19, 2012, while on routine patrol, the Trooper noticed a vehicle headed northbound on Highway 59 in Liberty County, Texas. The Trooper pulled up along the side of the vehicle and noticed that the passenger in the backseat was leaning forward all the way to the front seat and he was not wearing a seatbelt. Gaubatz was driving and Trooper Lamb also observed two adult passengers in the vehicle, a female seated in the front passenger seat and a male seated in the backseat.

The Trooper testified that although when he followed behind Gaubatz he did not notice any signs of erratic driving, he proceeded to initiate a traffic stop of the vehicle because the passenger in the backseat was not wearing a seatbelt. The Trooper testified,

> Due to the fact that there [were] 18-wheelers exiting, I had [Gaubatz] step to the rear of the vehicle and [I] made contact with him at the rear of the vehicle and ask[ed] him where he was going to. And Mr. Gaubatz was very frantic, almost to the point of being emotional, telling me he was trying to help somebody out. And he repeated over and over and over again trying to take somebody to get them out of his life.

---

[2]Two other law enforcement officers assisted Trooper Lamb after he had initiated the traffic stop, but the officers did not testify at the suppression hearing.

The Trooper further explained at the hearing that Gaubatz was "very nervous in his emotional state[,]" and there was a "very strong alcoholic odor emitting from [Gaubatz's] breath as he would talk" and when asked whether he had been drinking alcohol, Gaubatz initially admitted "he had consumed one beer prior to leaving Cypress." The Trooper testified that after alcohol was discovered in the vehicle, Gaubatz stated "that he had taken a couple of drinks of the whiskey" that the Trooper found in the center console between the front driver's seat and passenger's seat.

Law enforcement also found an open container of alcohol in the rear floorboard of the vehicle. The backseat passenger admitted he was not wearing his seatbelt but claimed he was trying to give Gaubatz directions so Gaubatz could take him to a truck-stop. The Trooper also spoke to the female passenger who initially made a statement that she had been assaulted and the Trooper had her get out of the vehicle. At that time, the Trooper observed she was "extremely inebriated" and she told the officer she had to go to the bathroom and the Trooper could "barely understand[]" what she was saying. When the Trooper turned to walk back to his vehicle, the female passenger "actually . . . urinated on the side of the road." Due to a need to identify the two passengers and to assess the situation

4

regarding the assault allegations, it was approximately twenty-nine minutes after the initial stop before the Trooper conducted any field sobriety tests on Gaubatz.

The Trooper administered the horizontal gaze nystagmus (HGN), the walk and turn, and the one-leg stand field sobriety tests on Gaubatz. Prior to administering the HGN test, Trooper Lamb observed that Gaubatz had "very watery, bloodshot eyes[]. And some other signs of impairment were the strong odor of the alcoholic beverage, slightly slurred speech, and he admitted to drinking alcoholic beverages, and open containers in the vehicle." Additionally, the Trooper explained that "during the investigation, [of] the other DWI, Mr. Gaubatz kept begging me to let him go to the gas station to rest or to -- you know, basically indicated to me he didn't think he should be driving either[.]"

Upon completion of the HGN test, the Trooper observed six out of six clues indicating that Gaubatz was intoxicated. And, on the "walk and turn" test, Trooper Lamb observed that Gaubatz had seven out of eight clues indicating intoxication. Furthermore, Gaubatz exhibited three of the four clues indicating intoxication on the one-leg stand test. The Trooper also administered a "preliminary breath test" which he described as "basically a field test to detect alcohol on a person's breath," and the test indicated Gaubatz's blood alcohol content was .241, which would be

5

three times the legal limit.[3] The Trooper arrested Gaubatz for driving while intoxicated. And, he confirmed through his "in-car computer" that Gaubatz had prior convictions for DWI.

The Trooper gave Gaubatz the DIC-24 warning and explained that he would be asking Gaubatz for a voluntary sample. Initially, Gaubatz consented to an intoxilyzer breath test. After being transported to the Liberty County Sheriff's Department Cleveland Annex, which was about a ten-minute drive from the location of the traffic stop, Gaubatz withdrew his consent for the breath test. The Trooper then transported Gaubatz to the Cleveland Regional Hospital, which was approximately another ten minutes from the Cleveland Annex, and the Trooper had the hospital personnel take a blood draw from Gaubatz. The Trooper testified that he proceeded with the blood draw pursuant to Transportation Code 724.012(b), and that the blood was drawn approximately one hour and fifty minutes after the traffic stop. The analysis of the blood showed .254 grams of alcohol per 100 milliliters of blood. The Trooper testified that he did not attempt to secure a warrant because of the "amount of time that had already passed" and due to the difficulty he would

---

[3]Gaubatz objected to the testimony regarding the result of the preliminary breath test on the basis that the test is "not scientifically accepted within the community." The trial court overruled the objection for the purpose of the suppression hearing.

have to secure a warrant. The trial court dictated its findings and conclusions into the record.

> THE COURT: . . . The -- the evidence suggests that -- and the Court finds that there were no exigent circumstances that the officer relied on or, frankly, that he could rely on, unless I'm incorrect in my notes. A little handheld breathalyzer showed a .241 and at .02 an hour, this guy had been drunk for hours on end. He had -- this is one case where he had plenty of time to go get a blood search warrant from a court. But I do find that the trooper properly relied on the statute. So the question is: Is the statute regarding implied consent for a mandatory blood draw, is it constitutional? At this point, the courts in Texas have said it's constitutional and the officer was following proper procedure. And I'm going to deny your -- your Motion to Suppress. Of course, you have your appeal.

> [DEFENSE ATTORNEY]: Yes, Your Honor.

> THE COURT: And you can take it up, and then if, you know, you go beyond the Court of Criminal Appeals, more power to you, and we'll get a final decision some years from now and we'll know.
> All right. That's the ruling of the Court. If y'all would get an order denying the -- the Motion to Suppress.

The trial court signed an order denying the motion to suppress.

### REASONABLE BASIS FOR STOP OR DETENTION

In his first issue Gaubatz argues there was no probable cause to stop and remove him from his vehicle. An officer may, without probable cause, stop and detain a citizen for a traffic violation for investigatory purposes. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968). A valid temporary detention must be reasonable. *Id*. at 19-20. There are two components for determining whether a *Terry* stop is justified. *Id.*

7

First, a court must determine "whether the officer's action [in detaining a person] was justified at its inception"; second, the court must determine whether the detention "was reasonably related in scope to the circumstances [that] justified the interference in the first place." *Id.*; *see also Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). If an officer has a reasonable basis for suspecting a person has committed a traffic violation, he may legally initiate a traffic stop. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *State v. McCall*, 929 S.W.2d 601, 603 (Tex. App.—San Antonio 1996, no pet.). "In deciding whether the scope of a *Terry* detention is 'reasonable,' the general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe*, 152 S.W.3d at 63.

A person commits a seatbelt violation if the person is at least fifteen years of age; is riding in a passenger vehicle while the vehicle is being operated; is occupying a seat that is equipped with a safety belt; and is not secured by a safety belt. *See* Tex. Transp. Code Ann. § 545.413 (West Supp. 2014). A violation of the vehicle safety laws is sufficient authority for an officer to stop a vehicle. *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982). It was not necessary for Trooper Lamb to show that the passenger was not actually wearing a seatbelt, but

8

simply that the Trooper reasonably believed that the passenger was not wearing a seatbelt. *See Drago v. State,* 553 S.W.2d 375, 377-78 (Tex. Crim. App. 1977).

The evidence in the record indicates that Trooper Lamb personally observed that the passenger riding in the backseat of Gaubatz's vehicle was leaning forward and it appeared he was not wearing a seatbelt in violation of Texas Transportation Code section 545.413. Trooper Lamb therefore had a reasonable basis to stop the vehicle. Furthermore, even though the initial stop was unrelated to the driving-while-intoxicated charge, an officer may investigate the occurrence of another offense while investigating the circumstances of the initial suspected violation. *See Armitage*, 637 S.W.2d at 939. The trial court could have reasonably determined that Trooper Lamb's testimony was credible and that the seatbelt violation warranted a continued detention and questioning of the driver.

Once the vehicle was stopped, Trooper Lamb asked Gaubatz to exit the vehicle and step to the rear of the vehicle. At that time, Gaubatz "seemed to be very nervous in his emotional state." There was a "very strong alcoholic odor emitting from [Gaubatz's] breath as he would talk." Further, Gaubatz admitted he consumed alcoholic beverages, and, according to the Trooper, Gaubatz stated that "he had consumed one beer" and "that he had taken a couple of drinks of the whiskey that . . . was found there in the center console between him and the front

seat female passenger." The totality of the circumstances surrounding the stop, as well as the admissions made by the driver and the passengers, and the physical evidence recovered within reach of the driver inside the vehicle, provided a reasonable basis for the Trooper to detain Gaubatz. We overrule the first issue.

DENIAL OF THE MOTION TO SUPPRESS

In his second issue, Gaubatz asserts the trial court erred in denying the motion to suppress the blood test results because of the Supreme Court's recent ruling in *Missouri v. McNeely*, 133 S.Ct. 1552 (2013). We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion. *Id*. We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). The same deference is afforded the trial court with respect to its rulings on the application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. *Id*. For mixed questions of law and fact that do not fall within that category, a reviewing court conducts a de novo review. *Id*.

10

At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). A trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We must uphold the trial court's ruling on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

Recently, this court issued its opinion in *State v. Anderson*, wherein we discussed the "totality of the circumstances" approach to warrantless searches as mandated and applied by the Supreme Court in *Missouri v. McNeely*. No. 09-13-00400-CR, 2014 Tex. App. LEXIS 11151, at *12 (Tex. App.—Beaumont Oct. 8, 2014, no pet. h.). As we stated in *Anderson*,

> "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 134 S.Ct. 2473, 2482 (2014) (citing *Kentucky v. King*, 131 S.Ct. 1849, 1856-57 (2011)). "The exceptions to the rule that a search must rest upon a search warrant have been jealously and carefully drawn . . . ." *Jones v. United States*, 357 U.S. 493, 499 (1958). "Even if a warrant is not required, a search is not beyond Fourth Amendment scrutiny; for it must be reasonable in its scope and manner of

11

execution." *Maryland v. King*, 133 S.Ct. 1958, 1970 (2013).

*See id*. at \*11.

The Court of Criminal Appeals has stated that the exceptions to the requirement of a search warrant include "voluntary consent to search, search under exigent circumstances, and search incident to arrest[.]" *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). Once the accused establishes that the search was conducted without a warrant, it is the State's burden to show that the warrantless search falls within one of these exceptions. *See id*. Because there was no search warrant for the blood draw performed on Gaubatz, the State had the burden of proof to establish an exception to justify the warrantless search and seizure of his blood. *See id*. On appeal, the State argues the implied consent and mandatory blood draw provision within the Texas Transportation Code constitutes statutory justification for the warrantless blood draw.

The indictment in this case alleges that Gaubatz was operating a motor vehicle in a public place, while intoxicated, and that he had three prior DWI offenses. These allegations would satisfy the provision contained in section 724.012(b)(3). *See* Tex. Transp. Code Ann. § 724.012(b)(3) (West 2011). Accordingly, once the Trooper arrested Gaubatz for DWI and received reliable

information indicating that Gaubatz had at least two prior DWI offenses, the statute required the officer to obtain a breath or blood sample.

The State argues that because the statute required the officer to obtain a breath or blood sample, it creates justification for the warrantless blood draw. However, as we have previously stated in *Anderson*,

> Simply because the statute requires the taking of a specimen of the person's breath or blood, however, does not end our inquiry. "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrong doing . . . reasonableness generally requires the obtaining of a judicial warrant[.]" *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652-53 (1995). "In the absence of a warrant, a search is reasonable only if it falls within a specific [recognized] exception to the warrant requirement." *Riley*, 189 L.Ed.2d at 439. There is no language in section 724.012(b) that authorizes a police officer to take the specimen without a warrant. *See McGruder v. State*, No. 10-13-00109-CR, 2014 Tex. App. LEXIS 9022, at *7 (Tex. App.—Waco Aug. 14, 2014, no pet. h.) (mem. op.).

2014 Tex. App. LEXIS, at *23.

For the reasons stated in *Anderson*, we conclude that section 724.012(b) does not constitute a *per se* exception to the Fourth Amendment's warrant requirements. Additionally, as we previously stated, *McNeely* reminds us that each case must be examined on a "case-by-case" basis, under a "totality of the circumstances" standard. *McNeely*, 133 S.Ct. at 1556, 1560-61. Furthermore, "[i]n

13

those drunk driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *McNeely*, 133 S.Ct. at 1561. We agree with the trial court that the statute is, on its face, constitutional and "[w]e have no reason to fault the constitutionality of the mandatory blood draw statute in this case because it did not require [the officer] to obtain a blood draw without first securing a warrant." *McGruder*, No. 10-13-00109-CR, 2014 Tex. App. LEXIS 9022, at *8 (Tex. App.—Waco Aug. 14, 2014, no pet.); *Douds v. State*, 434 S.W.3d 842, 859-61 (Tex. App.—Houston [14th Dist.] June 5, 2014, pet. granted) (op. on reh'g).

### EXIGENT CIRCUMSTANCES

On appeal, the State does not argue that there were exigent circumstances that justified the warrantless blood draw. Furthermore, the trial court expressly found that there were no exigent circumstances. Accordingly, it is unnecessary for us to reach the question of exigency on appeal. Because the State has failed to establish any recognized exception to the warrantless blood draw, we conclude that the trial court erred in denying the motion to suppress. Therefore, we must reverse and remand this matter for a new trial.

REVERSED AND REMANDED.

14

_____
LEANNE JOHNSON
Justice

Submitted on April 22, 2014
Opinion Delivered October 29, 2014
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.