

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00148-CR
### NO. 02-17-00149-CR

GARY DEON ELBEYALLEN A/K/A                                    APPELLANT
GARY DEON ALLEN

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NOS. 1451483D, 1451837D

----------

## MEMORANDUM OPINION[1]

----------

In a single point, Appellant Gary Deon Elbeyallen,[2] appeals the trial court's

denial of his motion to suppress in two prosecutions for drug possession.  *See*

Tex. Health & Safety Code Ann. § 481.115(b), (c) (West 2017).  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background

### I. Factual background

In April 2016, Naqibullah Haq owned "Mike's Discount Food Store," a convenience store on East Berry Street in Fort Worth. According to the arresting officer in this case, Officer James Polyak, Haq's convenience store was a known location of loitering, panhandling, and drug transactions. And according to Haq, Appellant often lingered around the store—as Haq testified at the suppression hearing, "[Appellant] was coming to the store like almost every day, but just, like, he was hanging over there. . . . And most of the time, I - - I told him, like, to leave. He never - - he never listen."

On the evening of April 9, 2016, Haq had grown tired of Appellant's lingering and refusing to leave. Haq testified at the suppression hearing that after he told Appellant to leave and Appellant refused to do so, Haq waited about 30 or 40 minutes and then called 911. In the 911 call,[3] Haq reported that Appellant and another man had been lingering around and inside the store for two to three hours, had harassed customers for change, and had refused to leave the property. And, when Officer Polyak and Officer D. Johnson arrived almost an hour later, the two men were still lingering in front of the store. When

---

[2]The record provides three names for Appellant: Gary Deon Elbeyallen, Gary Deon Allen, and Gary Deon Allen El Bey. For simplicity, we will refer to him as Appellant.

[3]A recording of the 911 call was admitted into evidence at the suppression hearing.

they spotted the officers, one of the men ran off but Appellant stayed behind. After unsuccessfully chasing the second individual, Officer Polyak returned to the convenience store to speak with Haq and Appellant.

Officer Polyak spoke to Haq inside the store, and both men testified at the hearing that Haq identified Appellant to Officer Polyak as one of the men who had been lingering in front of the store. According to Officer Polyak, Haq also stated that Appellant had been walking back and forth from cars for several hours. Officer Polyak then exited the store to speak to Appellant. According to Officer Polyak's testimony, while Officer Polyak was speaking to Appellant, Haq approached Appellant, identified him again and once more asked Appellant to leave.[4]

---

[4]Officer Polyak testified as follows:

> [State]. Did Haq, while in your presence, identify [Appellant]?
>
> A. Yes, he did.
>
> Q. He actually went out - - came out of the store and gave him a criminal trespass warning, correct?
>
> A. That is correct.

Given the trial court's findings, it seems clear that the trial court interpreted this testimony to mean that Haq told Appellant to leave again.

A video recording taken by Officer Polyak's body camera was admitted into evidence at the hearing. It did not capture Officer Polyak's arrival on the scene, his chase after the second man, or his interaction with Haq. It also did not capture this alleged interaction between the three men. However, it is unclear from the record whether this interaction occurred in the time before the body camera began recording. We note that it was the trial court's role to determine

3

Based on Officer Polyak's experience, he believed that Haq's description of Appellant's behavior indicated that Appellant was involved in drug transactions. Because he suspected that Appellant might still be in possession of illegal drugs, Officer Polyak asked Appellant for permission to search his person. Appellant declined.

Officer Polyak then pointed out a posted sign prohibiting loitering and criminal trespassing and informed Appellant that he was arresting him for loitering. As Officer Polyak began to place handcuffs on Appellant, Appellant started to pull away and yell aggressively, so Officer Polyak and Officer Johnson took him to the ground and held him for a few minutes until he calmed down.

Once Appellant was calm, Officer Polyak searched him and discovered a "white rock-like substance" in clear packaging and a Visine bottle containing "a brown liquid substance." Later testing revealed that the substances were cocaine and heroin, respectively.

While Appellant was being booked into jail, Officer Polyak completed an affidavit in which he explained that he arrested Appellant for criminal trespass. According to Officer Polyak, a jail sergeant recommended that he change his affidavit to recite a "general complaint citation for attempted criminal trespass," so he did.

---

the veracity of Officer Polyak's testimony about this interaction. *See Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We do not view the video recording as directly contradicting Officer Polyak's testimony and, even if we were to find that it did, it does not change the analysis laid out below.

4

## II. Procedural background

Appellant was subsequently charged with possession of heroin and possession of cocaine. He filed a "Motion to Suppress and Motion to Dismiss Vindictive Prosecution" in which he argued that the trial court should exclude "all evidence resulting from [his] detention and arrest" because the arrest and the search of his person violated his constitutional rights. *See* U.S. Const. amend. IV, XIV; Tex. Const. art. I, §§ 9, 19.

The trial court held a suppression hearing and heard the above-recited evidence. At the hearing, Appellant argued that Officer Polyak acted out of vindictiveness by arresting Appellant because he refused to consent to a search of his person. He also argued that Officer Polyak lacked probable cause to arrest Appellant because Officer Polyak originally arrested him for loitering, later stated that he arrested him for criminal trespass, and then charged him with attempted criminal trespass. Finally, Appellant argued that the "statutory scheme" defining attempted criminal trespass is void because it is too vague.[5]

The trial court denied the motion to suppress and made findings of fact and conclusions of law on the record which we have summarized as follows:

- Probable cause exists when, at the moment of the arrest, facts and circumstances within the arresting officer's knowledge are sufficient

---

[5]Appellant does not pursue this argument on appeal. *But see Heller v. State*, 347 S.W.3d 902, 905 (Tex. App.—Amarillo 2011, no pet.) (recognizing lesser-included offense of attempted criminal trespass and collecting cases holding similarly).

to warrant a prudent man believing that a particular person had committed or was committing an offense.

- Officer Polyak was truthful.

- Haq was truthful.

- Haq warned Appellant to leave.

- Appellant did not leave after being warned.

- Haq told Officer Polyak that Haq had told Appellant to leave.

- Haq was an owner as defined by the penal code. *See* Tex. Penal Code Ann. § 30.05 (West Supp. 2017).

- Haq's warning met the requirements of the penal code. *See id.*

- Officer Polyak had probable cause to arrest Appellant for the offense of criminal trespass.

- Officer Polyak's search of Appellant was lawful because the offense of criminal trespass constituted a breach of the peace.

- Alternatively and based on the totality of the circumstances, Officer Polyak had an independent basis to detain and search Appellant based on Haq's descriptions on the 911 recording and to Officer Polyak because they were consistent with illegal activity, whether loitering for the purposes of begging or drug dealing.

- Alternatively, Officer Polyak could have arrested Appellant for loitering.

- The Fort Worth city ordinance of loitering was not unconstitutionally vague.[6]

- Alternatively, Officer Polyak had authority under the code of criminal procedure to arrest Appellant when he failed to leave after Haq's request in Officer Polyak's presence.

---

[6]The trial court does not appear to have ruled on Appellant's challenge of the constitutionality of attempted criminal trespass.

- Officer Polyak's actions were reasonable under the totality of the circumstances known to him at the time of the search.

A jury later convicted Appellant of possession of heroin and possession of cocaine. The jury assessed a punishment of two years' confinement for the cocaine-possession conviction and 25 years' confinement for the heroin-possession conviction. This appeal followed.

## Discussion

In a single issue, Appellant argues that the trial court erred by denying his motion to suppress the evidence gained by his arrest and the search incident to that arrest because the arrest and search were not supported by probable cause.

## I. Standard of review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede*, 214 S.W.3d at 24–25; *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if

7

the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as in this case, the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex.

8

Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## II. Applicable law and analysis

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

### A. Warrantless arrest

Under the Fourth Amendment, a warrantless arrest is unreasonable per se unless it fits into one of a "few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993); *Torres*, 182 S.W.3d at 901. A police officer may arrest an individual without a warrant only if probable cause exists with respect to the individual in

9

question and the arrest falls within one of the exceptions set out in the code of criminal procedure. *Torres*, 182 S.W.3d at 901; *see* Tex. Code Crim. Proc. Ann. arts. 14.01–.04 (West 2015 & Supp. 2017). For instance, an officer may arrest an offender without a warrant for any offense committed in his presence or within his view. Tex. Code Crim. Proc. Ann. art. 14.01(b).

Probable cause for a warrantless arrest requires that the officer have a reasonable belief that, based on facts and circumstances within the officer's personal knowledge, or of which the officer has reasonably trustworthy information, an offense has been or is being committed. *Torres*, 182 S.W.3d at 901–02. Probable cause must be based on specific, articulable facts rather than the officer's mere opinion. *Id.* at 902. We use the "totality of the circumstances" test to determine whether probable cause existed for a warrantless arrest. *Id.*

Appellant argues that probable cause was not established because, in his view, there was no evidence to establish that he knowingly, intentionally, or recklessly committed the offense of criminal trespass. Appellant specifically relies upon his own action of staying on the scene when the police arrived as evidence that he did not know he was committing a crime, and—confusingly— argues that his refusal to leave the property despite Haq's repeated requests in the past and on the day of the arrest indicated that he was unaware of the criminal nature of his failure to leave another person's property.

Appellant's argument is nonsensical. The proper inquiry is not whether Appellant was aware that his behavior violated a criminal statute. It is well-

established that ignorance of the law is generally not an excuse. *See* Tex. Penal Code Ann. § 8.03 (West 2011). Rather, a person must act with the requisite culpable mental state to "engage[] in [the] conduct as the definition of the offense requires." *Id.* § 6.02 (West 2011). Criminal trespass requires that (1) a person, (2) without effective consent, (3) enters or remains on the property or in a building of another, (4) knowingly, intentionally, or recklessly, (5) when he had notice that entry was forbidden or received notice to depart but failed to do so. *Id.* § 30.05; *Day v. State*, 532 S.W.2d 302, 306 (Tex. Crim. App. 1975) (*disapproved of on other grounds by Hall v. State*, 225 S.W.3d 524, 527–31 (Tex. Crim. App. 2007)).

Whether Appellant knew that his disregard of Haq's repeated requests to leave constituted criminal trespass is not relevant. The determination turns on whether he intentionally, knowingly, or recklessly remained on the property when he had received notice to depart but failed to do so. His mental state can be inferred from his acts, words, and conduct. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. [Panel Op.] 1982). Appellant freely admits in his brief that Haq had asked him repeatedly—both before and on the day of the arrest—to leave the store property. And the trial court heard evidence that in Officer Polyak's presence, Haq asked Appellant to leave the property and Appellant refused. The trial court could have reasonably inferred that Appellant acted intentionally in ignoring Haq's requests.

11

Finally, Appellant argues that the evidence introduced at the hearing amounted to no more than a "mere suspicion or a hunch" of criminal activity. This is wholly incorrect. Setting aside Officer Polyak's suspicion that Appellant was involved in illegal drug transactions, the trial court heard evidence from Haq and Officer Polyak that Haq asked Appellant repeatedly to leave Haq's property and Appellant refused to do so. Officer Polyak also testified to his personal observation of Appellant on the property. Probable cause may be based upon the officer's personal knowledge coupled with personally observed behavior. *Beverly v. State*, 792 S.W.2d 103, 105–06 (Tex. Crim. App. 1990) (holding probable cause to arrest for criminal trespass was shown by officer's testimony that apartment manager had warned loiterers to leave and that officer observed loiterers were still on the property when he arrived). The trial court therefore did not err by finding that probable cause existed to arrest Appellant for criminal trespass. *See Stevens*, 235 S.W.3d at 740. Because we so hold, we do not need to address the trial court's conclusions that probable cause existed to arrest Appellant for loitering. We therefore overrule this portion of Appellant's sole point.

## B. Reasonableness of search

Once an officer has probable cause to arrest, he may search the accused incident to the arrest. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003); *see Best*, 118 S.W.3d at 862. Because we have held that the trial court did not err by determining that probable cause

12

existed to arrest Appellant, we accordingly hold that the search of Appellant was a lawful search incident to arrest. We overrule the remainder of Appellant's point.

## Conclusion

Having overruled Appellant's sole point, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

BONNIE SUDDERTH
CHIEF JUSTICE

PANEL: SUDDERTH, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 3, 2018